(No. 14358.—Decree affirmed.)

JOHN FRANKLIN DICKINSON, Plaintiff in Error, *vs.* LAURA M. DICKINSON *et al.* Defendants in Error.

*Opinion filed December 19, 1922.*

1. FRAUD—*fraud cannot be charged in general terms.* A bill seeking to avoid a transaction on the ground of fraud need not plead the evidence, but it is not sufficient to charge the fraud in general terms and the bill should allege the particular facts and circumstances relied on as constituting the fraud.

2. SAME—*what is not sufficient allegation of fraud in procuring execution of deed.* In a suit to set aside a deed on the ground of fraud in its execution, the mere averment that the grantor was sick, infirm and unable to understand the nature of the instrument he signed is not a sufficient allegation of fraud, there being no averment that the grantor's mental faculties were impaired or that he was prevented by fraud from reading the instrument or having it read to him.

3. SAME—*maker of instrument is charged with knowledge of its contents.* A party who signs an instrument is not justified in relying on representations as to its contents when he has ample opportunity to ascertain the truth of the representations before he acts, and if he does not avail himself of the means of knowledge open to him he cannot be heard to say he was deceived by misrepresentations.

4. DEEDS—*when bill to set aside a deed should allege fraud in acknowledgment.* A bill to set aside a duly acknowledged deed for fraud in its execution should contain an allegation that the acknowledgment was obtained by fraudulent collusion between the notary public and the grantee, and an allegation that the grantee represented the deed to be a receipt is not sufficient.

WRIT OF ERROR to the Circuit Court of LaSalle county; the Hon. EDGAR ELDREDGE, Judge, presiding.

CHARLES J. TRAINOR, JAMES J. TRAINOR, and GEORGE S. WILEY, for plaintiff in error.

IRWIN I. HANNA, and GEORGE P. HILLS, for defendants in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is a bill in equity for partition and other relief. The land sought to be partitioned is an 80-acre tract and a 65-acre tract. The 80-acre tract belonged to P. Dickinson, who died testate in 1867. By his will he devised said tract of land to his wife, Mary E., for life and remainder to his two sons, Charles H. and John Franklin, subject to a charge that the sons pay to three daughters of the testator, after the widow's death, $250 each. The will was duly admitted to probate. Charles died July 20, 1920, and in February, 1921, his brother, John Franklin, who is complainant here, filed his bill for partition of the 80 acres and the 65-acre tract, the title to which was in Charles, and for other relief. The original bill in substance alleged the 80-acre tract owned by complainant's father at the time of his death was improved by a dwelling house, barns and other out-buildings; that at the time of said death complainant was two years old and Charles was four years old; that the farm was managed by the widow, the life tenant, until about 1895, when her health failed and she gave up its management and it was thereafter managed by complainant and Charles and the proceeds turned over to their mother. The complainant alleges about 1888 he left the farm and secured employment in Chicago and elsewhere and Charles managed the farm in behalf of the widow; that from 1888 to 1900 complainant contributed out of his own earnings to his mother and to the care and management of the farm, at various times purchased horses to be used on the farm, and in addition thereto loaned Charles $4000; that com-

plainant was injured and became ill in 1900, continued ill for several years and has not yet fully recovered; that Charles, while managing the farm, applied the proceeds of it to his own use until the death of the widow, in 1917; that while the widow lived he allowed her a mere livelihood; that in 1900 complainant requested the payment of the $4000 Charles had borrowed from him; that a portion of it was paid in February of that year and the balance was paid in March, 1910, and Charles requested complainant to sign a receipt; that complainant was then sick, suffering from injuries he had received and unable to comprehend the character of the instrument he was asked to sign, and believing it to be a receipt for the $4000, signed the instrument and delivered it to Charles; that the instrument was, in fact, a quit-claim deed of his undivided half of the 80 acres to Charles; that after the signing of the instrument the complainant sent numerous sums of money to his mother, who resided on the farm, and carried his share of the management of the farm, believing he owned the undivided one-half subject to his mother's life estate; that in January, 1897, Charles purchased the 65 acres out of the profits of the 80-acre farm and from moneys advanced him by complainant, and in good conscience the title should have been taken in the name of the widow but the deed for the 65 acres was made to Charles; that after the death of the widow, in 1917, Charles operated the farm in his own name and applied the proceeds of the 145 acres to his own use and never made any accounting of the income and profits of the land; that the widow died intestate, her estate was never probated, and Charles took possession of the land and all the personal property thereon and converted the same to his own use. The widow left surviving her besides her sons, complainant and Charles, three daughters, Mary York, Sarah Fogg, and Lusette Strikland. The original bill further alleges that in 1913 Laura Kleinpeter, one of defendants, was employed by Charles to do household work on

the farm; that after the death of the widow Laura continued as a servant in the home; that in 1917 Charles became afflicted with an incurable disease, which grew in severity until the 17th of December, 1919; that he suffered great pain and sedatives were administered to relieve him; that it became necessary to operate on him for a cancerous growth about December 17, 1919; that for many months prior he wholly failed to comprehend the obligations and responsibilities of marriage, during which time Laura actively managed the farm and personal affairs of Charles; that the day before he was to be operated upon she induced him to enter into a marriage contract with her while he was under the influence of drugs, and the day following the marriage he was operated on in a hospital in Chicago but was continuously thereafter confined to his bed until the time of his death, in July, 1920, during which time he was unable to give any personal care to his affairs or to the farm and had not sufficient mental capacity to transact his ordinary business affairs; that the next day after the marriage, while Charles was not of sound mind and memory, Laura caused him to execute what purports to be his last will, by which, after payment of his debts, he devised to his sister Sarah $10,000, to his sister Mary $5000 and to his sister Lusette $10,000. He also gave his sister Lusette, in trust for the benefit of his niece, Florence Heitman, $5000. He gave his sister Sarah $10,000 in trust for the benefit of complainant, with directions to pay him the net income during his life, and if that was not sufficient to maintain him, to use the principal, as far as necessary, for that purpose, and at the death of complainant said sum, or what remained of it, should go to his sister Sarah. All the remainder of his property and estate he bequeathed and devised to his wife, Laura. Sarah Fogg was appointed executrix. The bill alleges that in January, 1920, Charles, still being of unsound mind, executed a codicil to his will, by which he gave his sister Sarah $5000 in addition to the previous bequests, to be held in

trust for the use of complainant on the same terms and conditions as the bequest made in the will for the benefit of complainant. The codicil also gave Sarah an additional $5000 in trust for testator's niece, Florence Heitman. The bill alleges the testator was of unsound mind at the time he executed the will, and that he was under the restraint and undue influence of his wife, Laura, who caused him to execute the same, and that he was wholly incapable of managing his property and transacting the ordinary affairs of life; that after the making of the will and codicil Charles executed a deed to all of the 145 acres to Timothy Fenton, together with a contract between Charles and Fenton, which instruments were placed in escrow with the Grand Ridge National Bank of Grand Ridge, to be delivered to Fenton on the payment of the purchase price of the land, $72,500, which instruments are now held in escrow by said bank; that after the making of the contract and deed and placing them in escrow the wife of Charles by undue influence caused him to assign to her $35,000 of the purchase money; that at the time said assignment was made Charles was near death and incapable of knowing and understanding the nature and effect of the instrument. Complainant alleges he is the equitable owner of the undivided one-half of the 80-acre tract through the will of his father; that his mother was the equitable owner, at the time of her death, of the 65 acres and that he inherited from her the undivided one-fifth thereof. The bill prays that the deed from complainant to Charles of March, 1910, to the undivided one-half of the 80 acres be set aside; that the marriage between Laura Kleinpeter and Charles be declared to be void; that the alleged will of Charles be set aside and declared null and void; that the deed made by Charles to Fenton and delivered in escrow be set aside and the bank enjoined from delivering the same; that the assignment of the $35,000 of the purchase price of the land to his wife be declared null and void, and that the 145 acres of land be partitioned in

accordance with the rights of the parties as alleged in the bill. The bill was sworn to by complainant.

Sarah Fogg, individually and as executrix of the will of Charles Dickinson, Mary York and Florence Heitman answered the bill, and Laura Dickinson demurred generally and specially to the bill. The special ground of demurrer assigned was that the bill was multifarious. The demurrer was sustained, and by leave of court complainant filed an amended bill very similar to the original bill, except that it did not set out the will of Charles and distinctly pray that it be set aside; also the amended bill contained no averment of the time the 65-acre tract was purchased by Charles nor where he procured the money to pay for it. The amended bill alleged Charles made a will but that he was of unsound mind when it was made and was wholly under the influence of his wife at the time. These allegations were denied by Sarah Fogg, Mary York and Florence Heitman in their answer to the original bill. By leave of court the demurrer to the original bill stood as a demurrer to the amended bill. The demurrer was sustained and the bill dismissed for want of equity, and complainant has sued out this writ of error.

Exhibits made part of the amended bill are a copy of a statutory-form quit-claim deed from complainant to his brother, Charles, of all interest in the 80-acre tract, dated and acknowledged before a notary public March 31, 1910, and which was recorded June 22, 1910; a copy of the contract for the sale to Fenton for $72,500 of the 145 acres, signed by Fenton, Charles Dickinson and his wife, Laura, dated June 29, 1920; and the assignment by Charles to his wife of one-half the purchase money, dated July 5, 1920. One of the persons who signed the contract for the sale of the land as a witness, also the assignment of part of the purchase money to Laura, was the sister, Sarah Fogg.

The allegations as to the invalidity of the deed by complainant to his brother of his interest in the 80-acre tract of land are, that Charles requested complainant to give him

a receipt when he paid the balance of the money complainant alleges Charles owed him; that complainant was sick, physically infirm, and unable to comprehend the character of the instrument presented for his signature, and relying on the representations of Charles that it was a receipt, the complainant signed and delivered the instrument to Charles, when, in fact, it was a deed. It is not required in a bill seeking to avoid a transaction on the ground of fraud that the evidence be pleaded, but it is not sufficient to charge fraud in general terms. A general allegation of fraud, however strong in expression, is insufficient. The bill should point out and state the particular facts and circumstances relied on as constituting the fraud. (*Bouxsein* v. *First Nat. Bank of Granville,* 292 Ill. 500; *Roth* v. *Roth,* 104 id. 35; *Dexter* v. *McAfee,* 163 id. 508; *Langlois* v. *McCullom,* 181 id. 195.) The charge of fraud here made in general terms is, that when Charles requested complainant to sign a receipt acknowledging payment of money complainant was suffering from injury received ten years before; that he was sick, physically infirm, and unable to comprehend the character of the instrument and relied on the representations of Charles that it was a receipt. There is no averment that he was unable to read or that he did not read the instrument, or that he was induced by fraud to sign it without reading or having an opportunity to read it or hearing it read. There is no averment of the nature and extent of complainant's illness or that his mental faculties were impaired. The allegation that he was sick and unable to comprehend the nature of the instrument he signed is not supported by any averment of facts to justify the conclusion he was unable to understand what he signed. The mere averment that he was sick, infirm and unable to understand the nature of the instrument amounts to no more than a general charge of fraud without specific facts establishing the fraud. A party in possession of his mental faculties is not justified in relying on representations made

when he has ample opportunity to ascertain the truth of the representations before he acts. When he is afforded the opportunity of knowing the truth of the representations he is chargeable with knowledge. If one does not avail himself of the means of knowledge open to him he cannot be heard to say he was deceived by misrepresentations. (*Spurgin* v. *Traub,* 65 Ill. 170; *Young* v. *Young,* 113 id. 430; *Tuck* v. *Downing,* 76 id. 71; *Crocker* v. *Manley,* 164 id. 282.) Beyond the mere allegation that complainant relied on the representations of Charles that the paper was a receipt there is no averment that any means were used to deceive him or prevent him from reading and knowing what the paper was. While he alleges he was sick and physically infirm, no other facts are alleged that warrant any inference he was unable to comprehend what the paper was that he signed. It appears from a copy of the deed made part of the bill as an exhibit, complainant acknowledged the deed before a notary public the day he signed it. There is no allegation the acknowledgment was obtained by fraud, and it has been decided where there is no allegation or proof of fraudulent collusion between the notary public taking the acknowledgment and an interested party, his certificate must prevail over the unsupported evidence of the grantor. *Oliphant* v. *Liversidge,* 142 Ill. 160; *Watson* v. *Watson,* 118 id. 56.

As to the 65-acre tract, there is no averment in the amended bill that it was purchased by Charles with money of his mother and without her knowledge the title was made to him. The bill contains allegations scattered through several paragraphs that while Charles was managing the 80-acre farm he applied the proceeds to his own use, and that the 65 acres equitably belonged to Mary E. Dickinson and on her death descended to her heirs. The bill prays that the court so decree; that complainant's deed to Charles for his interest in the 80 acres be set aside; that complainant be declared the owner of one-half of said tract; that the

marriage between Laura Kleinpeter and Charles be decreed to be void and the estate of Charles be distributed among the heirs "according to law and the provisions of said will," etc.   There is no allegation of any fact showing Charles did not buy the 65-acre tract and pay for it with his own money.   The allegation that he appropriated the proceeds of the farm to his own use is not an allegation that he bought the 65 acres with the proceeds of the farm, which belonged to his mother while she lived.   It is difficult to understand the pleader's theory in preparing the bill.   It wholly fails to allege any facts from which it could be inferred Charles held the 65 acres in trust for his mother, and while the amended bill does not pray that the will of Charles be set aside, it does pray that complainant's deed to Charles of his interest in the 80-acre tract be set aside and that Charles' interest therein be distributed among his heirs "according to law and the provisions of said will."   The original bill, which was sworn to by complainant, alleged Charles made a will in 1919 and sets out the substance of its provisions; that at the time he made it he was of unsound mind and was wholly under the influence of his wife and that it was not a valid will.   The only reference to the will in the amended bill is, that at the time (no date mentioned) of the execution of the instrument purporting to be Charles' will he was wholly under the influence of his wife and wholly unable to transact the ordinary affairs of life, but the amended bill does not pray that the will be set aside.   We must assume that as to complainant the will is a valid will and disposed of the property and estate of the testator.   But we need not further dwell on the allegations and prayer of the bill.   For the reasons given it was wholly insufficient to require an answer and the court properly sustained the demurrer.

The decree is affirmed.                    *Decree affirmed.*