Nat Malnick and Mauray G. Malnick, Appellees, v. William Rosenthal et al., Defendants. William Rosenthal, Appellant.

Gen. No. 42,111.

Opinion filed February 20, 1942.

SABATH, PERLMAN, GOODMAN & REIN, of Chicago, for appellant; ISIDORE GOODMAN, THEODORE E. REIN and RAYMOND L. PERLMAN, all of Chicago, of counsel.

DANIEL A. COVELLI, of Chicago, for appellees; HARRY A. GOLDSMITH, of Chicago, of counsel.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

This is an interlocutory appeal from an order granting a temporary injunction and from an order denying a motion to dissolve same.

On November 10, 1941, plaintiffs, Nat Malnick and Mauray G. Malnick, filed a complaint entitled ''Complaint in Chancery for Rescission and Cancellation of Contract,'' and on the same day procured the issuance of a temporary injunction without notice and without bond directed against the defendant William Rosenthal, restraining him from selling or assigning certain notes or making any effort to collect same, and from selling, assigning or in any other manner dealing with certain land until the further order of the court. On November 14, 1941, upon notice, defendant filed his motion to dissolve said injunction and the court having considered said motion entered an order directing plaintiffs to post an injunction bond of $5,000 by November 17, 1941, and denying defendant's motion to dissolve the injunction upon the filing of such a bond. Plaintiffs filed their bond within the time allowed and defendant then renewed his motion to dissolve the temporary injunction, which motion was again denied.

The complaint alleges substantially that plaintiffs, who had long been engaged in the building construction business, and defendant, who had long been engaged in the business of buying and selling unimproved real estate, entered into a contract, a copy of which is attached to the complaint and made a part thereof, whereby plaintiffs in consideration of $22,000, payable by them $10,000 in cash and the balance in notes due over a period of 20 months from May 5, 1941, purchased from defendant an undivided one-half interest in three parcels of subdivision property located in the States of Illinois and Wisconsin and entered into a partnership agreement with the defendant for the purpose of selling said property. The complaint further alleges and the agreement between the parties sets forth that in connection with plaintiff's purchase of

the one-half interest in said properties defendant represented to them as to one parcel of said property, title to which is held in trust by the Chicago Title & Trust Co., as trustee under its Trust No. 32435, that he was the sole beneficiary under said trust and the sole owner of all of said real estate, free and clear of any incumbrance and subject only to back taxes and special assessments, building restrictions and zoning ordinances; that as to the second parcel of said real estate, title to which is held in trust by the Elmhurst State Bank as trustee under trust agreement dated March 31, 1924, and known as Trust No. 101, defendant had a disputed interest in said property and that the Elmhurst State Bank had refused to accept the assignment of his beneficial interest; and that as to the third parcel, known as Lake Shangri-La Woodlands, a subdivision in the county of Kenosha, State of Wisconsin, defendant represented that he was the sole owner thereof subject to a first mortgage of $1,400 with interest at 6 per cent from July 29, 1940, with a provision for the release of lots in said subdivision upon the payment to the mortgagee of $50 a lot and that said property was also subject to a debt of $880 to the Leesley Nurseries and to unpaid taxes to date. These are the only representations contained in the written contract between the parties and the complaint makes no charge that any of said representations were untrue.

The complaint then charges that defendant also represented to plaintiffs "that all public improvements on said land had been installed and paid for; that water, sewerage mains, electricity conduits and street paving had been installed on all said land and paid for and that the said land was then in readiness for the construction of homes upon said land; that the sewerage mains, water mains, electricity conduits and street paving had been installed and paid for and that all electrical conduits and sewerage mains were available for instant use and that all water mains were available

for instant use''; that defendant further represented that ''there were liens on said lots for back taxes and that he . . . had made arrangements with the proper local authorities for the release of each lot from said lien, upon the payment of . . . $60.00 . . . upon each lot in full payment of said arrears in taxes''; and that ''upon payment of said sum of . . . $60.00 . . . on each lot, the said lot would be released from all further tax liens and a clear title granted to the prospective purchaser''; that ''defendant represented to the plaintiffs that the building restrictions on a portion of the land herein described required that structures to be erected on said land should have a minimum value of . . . $5,000.00 . . . and that he, the said defendant, had arranged with the authorities in whose jurisdiction said land was situated to reduce the minimum restriction from . . . $5,000.00 to . . . $3,500.00 . . . ''; that ''defendant represented to the plaintiffs that the building restrictions on a portion of the land herein described required that structures to be erected on said land should have a minimum value of . . . $7,500.00 . . . and that he, the said defendant, had arranged with the authorities in whose jurisdiction said land was situated to reduce the minimum restriction from . . . $7,500.00 . . . to . . . $3,500.00 . . . ''; and that plaintiffs relying upon said representations as being true, entered into the agreement with defendant, paid him $10,000 as provided in the contract, executed and delivered the notes called for by the contract and paid said notes as they became due up to and including October 5, 1941.

The complaint then alleges that plaintiffs signed a lease for offices to be used by the copartnership; that ''plaintiffs have become liable as partners on many obligations created by the defendant and as partners might become charged with equal responsibility with the defendant as copartners''; that the defendant's representations with reference to the installation of

and payment for improvements such as electric conduits, sewers, water mains and streets, with reference to existing agreements with the authorities for the payment of $60 on each lot for the release of the tax lien on such lot and with reference to the minimum value of structures to be erected on the land, were false and fraudulent and made with intent to deceive plaintiffs and to induce them to enter into the contract with the defendant and that the defendant knew that said representations were fraudulent; that defendant is in possession of the notes payable on and after October 5, 1941, which were delivered to him by plaintiffs, and has threatened to sell or assign said notes to bona fide purchasers for value; that plaintiffs "are informed and believe" that unless defendant is restrained from selling and assigning said notes, they will be sold to bona fide purchasers for value; that plaintiffs have notified defendant of their election to cancel and rescind their contract, have demanded the return of all moneys paid thereunder and that defendant has refused to repay said money; that said contract having been procured by fraud, is illegal and void and should be canceled; and that the court should enter an order restraining defendant "from selling or assigning any of the notes executed by the plaintiffs in pursuance of the contract herein mentioned and restraining the said defendant from obtaining judgment on said notes until the final disposition of the issue herein created" and also "restraining him from selling any of the lots set forth in the said contract and from engaging in the sale or transfer of any such lots until the hearing on the merits of this cause."

The complaint prayed that the contract between defendant and plaintiffs be declared to be illegal and fraudulent in law and that it be rescinded and declared null and void; that defendant pay plaintiffs the sum of $25,000 and any other sum found to be due and owing from the defendant, together with interest, and

for other relief; that "this court issue an injunction restraining the said defendant from selling, assigning or hypothecating any of said notes"; and that "said injunction further restrain the defendant William Rosenthal, from selling, assigning or in any other manner dealing with any of the land embodied in the terms of said agreement."

While many points are argued by defendant in his brief, we deem it necessary to consider only the question whether the facts alleged in plaintiffs' complaint, if proved and not controverted, entitle them to the final relief prayed for.

It is fundamental that to entitle a plaintiff to relief by way of temporary injunction, his complaint must allege facts which prima facie give him the right to the relief prayed for on a final hearing. "It is essential that the bill should make a prima facie case for final relief by alleging facts which, if proved and not controverted, will entitle the complainant to the relief prayed for." *Baird v. Community High School District,* 304 Ill. 526.

In the recent case of *Bundesen v. Lewis,* 368 Ill. 623, the law applicable to a factual situation such as is presented here was clearly enunciated. In that case Dr. Bundesen entered into a written contract in April 1925, for the purchase of an interest in a block of property in Niles Center bounded on the south by Main street and he later acquired additional interests in said block. He continued to make payments on the purchase price of this property until the Fall of 1928, when such payments amounted to $52,681.25, including principal and interest. He made no further payments but filed a complaint for the cancellation of his contract of purchase, for an accounting and for the return of so much of the price of the real estate as he had paid. His asserted right to the relief sought was predicated primarily upon the alleged fraudulent misrepresentations made to him by the vendor's agent, to

the effect that Main street extended west beyond this property and that State bond issue route 58 from Elgin to Evanston, would be on Main street along the south side of the block of property in question. He claimed that in reliance upon the truth of these statements he was induced to sign the purchase contract. There the court said at pages 636 and 637:

"Dr. Bundensen was a resident of Chicago during all this period. He knew or should have known that by the use of the telephone or the mails he could learn from the department at any time whether the location of route 58 had been determined, and, if so, its course west out of Evanston. Dr. Bundesen was not an illiterate man, nor ignorant of public affairs. At the time of his purchase he occupied the important and responsible position of commissioner of health of the city of Chicago, was subsequently elected coroner of Cook county and at the time of the hearing before the master, was president of the board of health of Chicago. He had read a great deal in the newspapers about these bond issue roads prior to his purchase and he said the thing that attracted him particularly was that Governor Small was said to be utilizing these roads to further his political fortunes. Under these circumstances it can not be said that Dr. Bundesen had a right to rely upon the alleged declaration of Karambelas as early as April 9, 1925, that Main street would be the route to connect Elgin and Evanston.

"As this court said in *Dickinson v. Dickinson,* 305 Ill. 521: 'A party in possession of his mental faculties is not justified in relying on representations made when he has ample opportunity to ascertain the truth of the representations before he acts. When he is afforded the opportunity of knowing the truth of the representations he is chargeable with knowledge. If one does not avail himself of the means of knowledge open to him he cannot be heard to say he was deceived by misrepresentations.' Where no deceit has been

practiced nor fraudulent misrepresentation made which ordinary prudence could not detect, the law will not aid one capable of protecting his own interests because he makes a bad or losing bargain. (*Hustad v. Cerny,* 321 Ill. 354; *Johnson v. Miller,* 299 id. 276.) There was no distinction here in the means of knowledge of any of these parties respecting the location of route 58. The information pertaining to it was readily available to any inquirer. Appellee's claim that the representation that Main street extends west beyond this property, which the master found to be the representation of a material fact, influenced him, can scarcely avail him here, since he, in the summer of 1927, viewed the premises and thereafter not only continued his payments, but took over Kaplan's interest. He must be held now to have waived any claim to a rescission of the contract on that ground.

"The conclusion is inescapable that no actionable fraud on the part of any of the appellants here was established by the evidence."

Although there is force in defendant's contention that many of the allegations of plaintiff's complaint are uncertain, contradictory and mere conclusions unsupported by facts and although said complaint is characterized by evasiveness rather than by frankness and by the facts concealed rather than by those revealed, it will be assumed hereinafter in our discussion of the facts that same were properly alleged. In our consideration of the facts alleged in the complaint in the light of the *Bundesen* case, it must be borne in mind that plaintiffs were and are engaged in the building construction business, especially the building of homes, and that they had many years of experience in that line of work before they entered into the contract with defendant. It is readily apparent that their line of work necessarily made plaintiffs much more familiar with the matters involved in the alleged mis-

representations herein than was Dr. Bundesen with those involved in his case.

It should also be borne in mind that the contract between the parties involved three separate and distinct parcels of property. The record does not disclose where the first parcel is located, but it will be assumed from statements made in the briefs of the parties that it was in Elmhurst, Du Page county, Illinois. The second parcel is in Du Page county, Illinois. The third parcel is described as being in "Lake Shangri-La Woodlands, a Subdivision . . . in the County of Kenosha, State of Wisconsin." In stating the facts upon which they rely in their complaint to show their right to the final relief sought, plaintiffs made no attempt as to some of the charges contained therein to distinguish the particular parcel or parcels of land to which the facts alleged were applicable.

A brief analysis of the complaint will show its insufficiency. It is first charged that defendant fraudulently misrepresented to plaintiffs that "all public improvements on said land had been installed and paid for; that water, sewerage, mains, electricity conduits and street paving had been installed on all said land and paid for and that the said land was then in readiness for the construction of homes upon said land"; and that "all electrical conduits and sewerage mains were available for instant use." The mere reading of these allegations demonstrates the absurdity of defendant making any such statements if they were not true or of plaintiffs relying upon them. The facts as to whether "all public improvements on these properties were "installed and paid for" were equally available to the parties and a single visit to said properties, which were readily accessible, would have disclosed immediately to the practiced eye of plaintiffs, who were experienced "home builders," whether or not sewerage mains, water mains, electricity con-

duits and street paving had been installed, were avail-able for instant use and were in readiness for connection with homes that might be constructed and, of course, it would not even take the practiced eye of an experienced constructor of homes to discover whether or not the streets were paved.

It is next charged in the complaint that defendant represented to plaintiffs that "there were liens on said lots for back taxes" and that he fraudulently misrepresented to them that he "had made arrangements with the proper local authorities for the release of each lot from said lien upon the payment of . . . $60.00 . . . upon each lot in full payment of said arrears and taxes."

Again, the fact as to whether defendant made any such arrangement with the "proper local authorities" concerning the release of the tax lien as to individual lots was equally available to the parties. A mere inquiry would have disclosed to plaintiffs whether or not any such arrangement had been made and plaintiffs knew or should have known that by the use of the telephone or the mails they could learn from the "proper local authorities" at any time whether defendant had made the alleged arrangement for the release of the tax lien.

It is then charged that defendant fraudulently misrepresented to plaintiffs that he had arranged "with the authorities" for a change in the building restrictions as to certain parcels of the land (without indicating which) to the end that structures of a lesser minimum value might be erected thereon. The fact as to whether or not any arrangements were made by defendant with "the authorities in whose jurisdiction said land was situated" for said change in building restrictions was also equally available to plaintiffs and they could have readily ascertained by personal inquiry or by the use of the telephone or mails whether or not such arrangements had been made.

It is on the foregoing allegations of the complaint that plaintiffs primarily predicate their right to final relief in this cause and we are impelled to conclude that no case has been made by said complaint to entitle plaintiffs to any of the relief prayed for therein. No other conclusion is possible if we adhere to the rule enunciated by the Supreme Court in the *Bundesen* case that "if one does not avail himself of the means of knowledge open to him he cannot be heard to say he was deceived by misrepresentations." In the instant case, as in that case, there was no distinction in the means of knowledge of the parties concerning the matters alleged to have been misrepresented and the information pertaining to same "was readily available to any inquirer."

Since plaintiffs' complaint did not make out a prima facie case for the final relief they sought, they were not entitled to a temporary injunction with or without notice. In this view of the record it becomes unnecessary to consider other points raised on this appeal.

The orders of the circuit court granting plaintiffs the temporary injunction and denying defendant's motion to dissolve same are reversed.

*Orders reversed.*

SCANLAN, P. J., and FRIEND, J., concur.