JOHN C. THEODOSAKIS *et al.*, Plaintiffs-Appellants, *v.* AUSTIN BANK OF CHICAGO, Defendant-Appellee.

First District (5th Division)    No. 80-702

Opinion filed February 20, 1981.

Milton K. Joseph, of Rosemont, for appellants.

Carey, Filter & White, of Chicago (Edmund P. Boland and Edward M. White, of counsel), for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

This is an appeal from the trial court order which granted defendant's motion to dismiss plaintiffs' complaint as amended. The issues presented for review are: (1) whether the complaint, as amended, states a cause of action; (2) whether the purported modification agreement of December 20, 1974, converted the demand note into an installment note; and (3) whether the bank's renewal note of August 18, 1979, was unilaterally and without consideration ineffective to alter the terms of the December 20, 1974, agreement. We affirm.

The complaint as amended contains the following allegations.

On March 18, 1974, plaintiffs executed a promissory note payable to the bank in the principal amount of $227,000 due on demand after date and bearing interest at the rate of 8½ percent per annum. At the time the note was executed, there was an oral agreement between the plaintiffs and the bank that monthly principal payments in the amount of $2000 plus interest on the principal balance due would be paid on the note. There was no agreement as to the duration of this oral repayment arrangement.

On April 11, 1974, the bank billed plaintiffs for the payments of $2000 plus interest in accordance with the understanding. From May 22, 1974, to October 24, 1974, plaintiffs made the payments of $2000 per month plus interest, leaving a principal balance on October 24, 1974, in the amount of $215,000 with interest paid to October 20, 1974.

During the months of November and December, 1974, plaintiffs became aware that the payments as agreed were too burdensome and requested the president of the bank to modify the payments and to enter into a permanent arrangement for the liquidation of the indebtedness. Pursuant to an agreement entered into between plaintiff John Theodosakis and the bank on December 20, 1974, the bank sent plaintiffs a letter stating that the bank agreed to bill plaintiffs $2000 a month to be applied against the principal and interest starting on January 20, 1975, and each month thereafter. Additional lump sum principal reductions were to be made upon the successful sale of certain properties. On the same day plaintiffs paid the bank $2000 due on November 20, 1974, under the original agreement, an additional sum for interest due up to and including December 20, 1974, and an additional payment of $26,000 to be applied to the principal. One of the parcels of real estate referred to in the letter was sold and a sum of approximately $5000 was paid to the bank and applied to other indebtedness due from plaintiffs to the bank.

Monthly payments pursuant to the December 20, 1974, letter were made for approximately 5 years through the month of August 1979. On August 18, 1979, the bank wrote plaintiffs a letter enclosing a renewal note in the amount of $141,708.93. Upon receipt of the letter and renewal note, plaintiff Helen A. Theodosakis telephoned the bank to question the

necessity for a renewal note and explained that plaintiffs had never been previously requested to sign renewal notes. The officer of the bank who signed the letter replied that Federal regulations required borrowers of the bank to furnish a statement that proceeds of the loan will be used solely for business purposes and that the bank did not have such a statement on file and would have to have it for their records. The bank officer did not mention anything in the conversation about any change in the terms of the note and Mrs. Theodosakis assumed the terms were unchanged. Plaintiffs, relying upon the bank officer's reason for sending the renewal note, signed and returned the renewal note to the bank.

The renewal note dated August 20, 1979, differed from the letter of December 20, 1974, in that it provided for payment "On demand but not later than August 20, 1980" and the interest rate was changed from 8½ percent to the "prime" rate. Plaintiffs had no negotiations with the bank for any modification of the payment terms as provided in the letter of December 20, 1974, and no consideration passed between the parties to support a change in the terms of the note.

On September 19, 1979, plaintiffs, through their attorney, sent a letter to the bank enclosing a check for the installment due September 20, 1979, on the note dated March 18, 1974. Plaintiffs also enclosed the original note of March 18, 1974, and requested that the renewal note dated August 20, 1979, be cancelled and returned to plaintiffs.

On October 16, 1979, the bank returned plaintiffs' check and demanded payment of the indebtedness according to the terms of the August 20, 1979, renewal note. The bank remains unwilling to recognize the agreement of December 20, 1974.

Neither the original note nor the renewal note was ever negotiated by the bank and was in the possession of the bank when the complaint was filed. Copies of the notes dated March 18, 1974, and August 20, 1979, and the letters dated December 20, 1974, August 18, 1979, September 19, 1979, October 16, 1979, and January 19, 1980, were attached as exhibits to the complaint.

The bank filed a motion to dismiss the complaint as amended as insufficient in law pursuant to section 45 of the Illinois Civil Practice Act. (Ill. Rev. Stat. 1977, ch. 110, par. 45.) Plaintiffs filed a response. The court granted the motion and this appeal followed.

OPINION

I.

■■ A motion to dismiss admits all facts well pleaded and the reasonable inferences which may be drawn therefrom are taken as true for the purposes of the motion. (*Giers v. Anten* (1978), 68 Ill. App. 3d 535, 539, 386 N.E.2d 82, 85; *Horwath v. Parker* (1979), 72 Ill. App. 3d 128, 134, 390

N.E.2d 72, 77; *Courtney v. Board of Education* (1972), 6 Ill. App. 3d 424, 425, 286 N.E.2d 25, 26.) The attached exhibits are an integral part of the complaint and must be so considered. (*Fowley v. Braden* (1954), 4 Ill. 2d 355, 360, 122 N.E.2d 559, 562.) A reviewing court should interpret the facts alleged in the complaint in the light most favorable to the plaintiffs. (*Farns Associates, Inc. v. Sternback* (1979), 77 Ill. App. 3d 249, 252, 395 N.E.2d 1103, 1105; *Cipolla v. Bloom Township High School District No. 206* (1979), 69 Ill. App. 3d 434, 437, 388 N.E.2d 31, 34.) Additionally, the complaint should not be dismissed unless the pleadings disclose that no set of facts could be proved that will entitle the plaintiff to relief. (*Agee v. First National Bank* (1979), 68 Ill. App. 3d 794, 386 N.E.2d 899; *Patton v. T.O.F.C., Inc.* (1979), 79 Ill. App. 3d 94, 98, 398 N.E.2d 313.) In sum, the pleadings are to be liberally construed with the view of doing substantial justice between the parties. Ill. Rev. Stat. 1977, ch. 110, par. 33(3).

## II.

Plaintiffs contend that the modification agreement of December 20, 1974, converted the original demand note of March 18, 1974, into an installment note and that there was good and sufficient consideration for this modification. The bank in its response and on appeal maintains that the purported modification agreement: (1) was unsupported by any consideration; (2) lacked mutuality of obligation; (3) is incapable of enforcement due to indefiniteness; and (4) fails to manifest plaintiffs' intent to be bound.

Pursuant to the original demand note dated March 18, 1974, plaintiffs and the bank reached an oral understanding that monthly payments of $2000 on the principal plus interest were to be made, but the duration of this arrangement was not specified.

■■ ■ Instruments payable on demand include those payable at sight or on presentation and those for which no time for payment is stated. (Ill. Rev. Stat. 1977, ch. 26, par. 3—108.) An instrument which contains an unconditional promise to pay a sum certain which does not contain a fixed or determinate future time of payment constitutes an engagement to pay the note on demand. (*McConnaughy v. Gage* (1929), 252 Ill. App. 17.) A demand note is due and payable immediately upon execution. (*Luther v. Crawford* (1904), 116 Ill. App. 351, *aff'd* (1905), 213 Ill. 596, 73 N.E. 430; *Slingo v. Steele-Wedeles Co.* (1899), 82 Ill. App. 139; 28 Ill. L. & Prac. *Negotiable Instruments* §99 (1957).) As such, a demand note may be paid by the maker at any time. (*Utay v. Urbish* (Tex. Civ. App. 1968), 433 S.W.2d 905.) A cause of action against the maker accrues in the case of a demand instrument upon its date, or if no date is stated, on date of issue. (Ill. Rev. Stat. 1977, ch. 26, par. 3—122.) Consequently, plaintiffs have the right to tender the balance due on the note and would not be required to

pay interest beyond the date of full repayment. Plaintiffs allege that after a period of eight months, they became aware that the payments were too burdensome and orally requested the bank to modify the payments and make them permanent. This request resulted in the modification letter of December 20, 1974, which provided in pertinent part:

> "We have agreed to bill you for $2000 a month to be applied against principal and interest starting on January 20, 1975 *and each month thereafter*. We understand that if you are successful in the sale of your interest in Village Manor Apartments or the Diplomat Apartments, additional lump sum principal reductions will be made." (Emphasis added.)

Plaintiffs relying on *Freeman v. Truitt* (1960), 238 Miss. 623, 119 So. 2d 765, argue that the modification agreement dated December 20, 1974, which provided for monthly payments of a definite amount commencing on a certain day and continuing for every month thereafter, converted the demand note into an installment note. They argue that the extension was for a definite period and that it was a matter of mathematical calculation, namely, until 1987 when the $2000 per month payments would pay the note in full.

However, *Freeman* is distinguishable from the present controversy in that the debtor originally signed a promissory note with a specific maturity date. Prior to the date of maturity, the debtor executed an endorsement to the note by which he agreed to liquidate this obligation with interest at the rate of $90 per month and continuing until the whole of said note and interest had been paid. The debtor later defaulted on the note and pleaded the statute of limitations as an affirmative defense. The court there held that a promise to pay a preexisting debt is valid without any new consideration and that the debtor's promise to pay interest on the indebtedness until the debt was paid was clearly a benefit to the creditor. The court reasoned that once the debtor executed the memorandum agreement to pay the indebtedness in monthly installments of $90, the debtor could not have required the creditor to accept payment of the principal in a lump sum prior to the dates of maturity of the several installments and forego his right to demand interest.

Plaintiffs argue that both parties gained an advantage in that the bank was assured of 13 years' interest on the obligation which plaintiffs were obligated to pay, while plaintiffs were assured of having a period of 13 years over which to pay the note.

In the present case plaintiffs were already required to pay 8½ percent interest per annum pursuant to the original demand note. The letter of December 24, 1974, which plaintiffs refer to as a modification agreement merely made an accommodation to plaintiffs after they indicated that the monthly installments were too burdensome. The bank, as creditor, unlike

*Freeman*, received no additional benefit since the interest rate remained constant at 8½ percent. Additionally, the letter of December 20, 1974, also contemplated the possibility of early payment. It specifically states that upon the sale of certain properties additional lump sum payments were to be made toward the principal. The letter in no way suggests that plaintiffs could have been required to pay interest for 13 years even if repayment was completed within a shorter period.

■■ ■ For an extension of the payment of a note to be binding on the parties, it must be for a definite period and must be supported by consideration. (*Amberg v. Nachtway* (1900), 92 Ill. App. 608.) A promise by the maker (debtor) of a note to pay interest at the same rate as the note bears, during the period of extension which does not designate a definite period, is not sufficient consideration for the agreement of the holder (creditor) to extend the time of payment. *Booth v. Wiley* (1881), 102 Ill. 84; see also 28 Ill. L. & Prac. *Negotiable Instruments* §112 (1957); 12 Ill. L. & Prac. *Contracts* §322 (1955).

Williston on Contracts addresses this specific issue:

"§122. Mutual Promises to Extend Interest-Bearing Debt. When a debtor and creditor agree that an interest-bearing debt shall be extended for a fixed time, the promise of each is of something detrimental, as the creditor promises to forbear the collection of his claim, and the debtor gives up his power to stop the accrual of further interest by the payment of the principal as maturity. Accordingly, such agreements are generally upheld. The promise to pay interest on such an obligation need not be expressed, as it will be implied from the transaction itself. If, however, the debtor neither promises to refrain from paying the debt until a fixed day in the future, nor to pay interest until that time whether the debt is paid or not, there is no consideration to support the creditor's promise to extend the time of payment." I Williston on Contracts §122, at 512-14 (3d ed. 1957).

The time to which payment of a note is extended must be definite and the payee's agreement that the note may be extended until the makers were able to pay, and that he would not crowd them, was not a valid extension and the creditor had the right to demand payment at any time the principal and interest became due. *Lanum v. Harrington* (1915), 267 Ill. 57, 107 N.E. 826.

The present situation is comparable to *Crossman v. Wohlleben* (1878), 90 Ill. 537. That court held that a mere promise of indulgence on payment of interest at the rate named in the note, or at any other rate, is not binding without something to bind the debtor to pay interest for a given time. The payment of interest in advance or a promise by a debtor to keep the money for a given time at a given rate of interest would be

sufficient consideration to extend the payment for a given time. It is essential that both parties be bound by the agreement.

Similar to *Crossman*, the letter (in the instant case) dated December 20, 1974, does not indicate that plaintiffs bound themselves to keep the money and pay the interest upon it for any specified time, or that they paid interest in advance. Plaintiffs merely requested the bank to accept a lesser sum per month at the same rate of interest as required by the original note. The letter of December 20, 1974, did not bind plaintiffs to retain the money for any certain period of time. Consequently, the promise of the creditor lacks consideration and is not binding on either party. *Crossman v. Wohlleben*.

Had plaintiffs repaid this debt early, there is no indication in the letter of December 20, 1974, that they would have been required to pay interest beyond the date of full repayment. The possibility of additional lump sum payments belie any argument that the payment of this debt was extended for a specific period.

■■ Since the accommodation made plaintiffs reduces their monthly payments, lacked sufficient consideration and did not bind plaintiffs for a definite period of time, the letter of December 20, 1974, did not convert the original demand note dated March 18, 1974, into an installment note.

III.

Plaintiffs next contend that the renewal note dated August 20, 1979, lacked consideration and was given only for a specific purpose, namely, that the note was merely to be used as an acknowledgment by the makers that the proceeds of the loan would be used solely for business purposes. The bank maintains that the renewal note constituted a modification of the terms of the original note dated March 18, 1974, and because the original note was a demand obligation, renewal could be offered by the bank on whatever terms the bank deemed appropriate since plaintiffs have the right to reject the renewal terms by tendering the amount due.

Since we previously determined that the letter of December 20, 1974, did not convert the original demand note into an installment note, the bank had the right to demand payment at any time. Ill. Rev. Stat. 1977, ch. 26, par. 3—122; White and Summers, Uniform Commercial Code § 13—7, at 499 (2d ed. 1980).

■■ Plaintiffs argue that since the bank stated the only purpose of the renewal note was to assure that the proceeds of the loan were to be used only for business purposes, the note can only be used for said purpose. (See Ill. Rev. Stat. 1977, ch. 26, par. 3—306(c); *Danville UAW CIO Local No. 579 Credit Union v. Randle* (1965), 58 Ill. App. 2d 84, 206 N.E.2d 253.) However, in paragraph 7 of plaintiffs' complaint, which refers to the purpose of the renewal, one of the plaintiffs (Mrs. Theodosakis) avers that

the bank officer did not mention anything in their conversation about any change in the terms of the note and that she assumed the terms were unchanged. An individual is not entitled to rely on a statement whose falsity would be apparent to anyone using ordinary prudence. (*Mother Earth, Ltd. v. Strawberry Camel, Ltd.* (1979), 72 Ill. App. 3d 37, 51, 390 N.E.2d 393, 405.) The renewal dated August 20, 1979, plainly shows the amount of the note to be $141,708.93, the ultimate due date—August 20, 1980, and that the rate of interest during this period was to be the prime interest rate.

Under the circumstances of this case, what was stated in *Dickinson v. Dickinson* (1922), 305 Ill. 521, 527-28, 137 N.E. 468, 470, is most apt:

"A party in possession of his mental faculties is not justified in relying on representations made when he has ample opportunity to ascertain the truth of the representations before he acts. When he is afforded the opportunity of knowing the truth of the representations he is chargeable with knowledge. If one does not avail himself of the means of knowledge open to him he cannot be heard to say he was deceived by misrepresentations."

In addition, any question concerning the use of the renewal note was answered in two subsequent letters sent by the bank (one to plaintiffs' attorney, the other directly to the plaintiffs).

In the first letter dated October 16, 1979, the bank indicated that plaintiffs could either pay the outstanding balance in accordance with the terms of the renewal loan dated August 20, 1979, or the bank would have no alternative but to confess judgment on the balance due. On January 19, 1980, the bank sent written notice to plaintiffs demanding full payment of their indebtedness. It is apparent from the first letter that the bank was willing to forego its right to demand immediate payment on the original note and agreed to renew the loan at the greater rate of interest. Plaintiffs, on the other hand, had the option to pay the increased interest rate or to pay the outstanding balance in full.

IV.

For the reasons stated, the order of the trial court dismissing the complaint, as amended, is affirmed.

Affirmed.

SULLIVAN, P. J., and WILSON, J., concur.