189 N.J. Super. 347 (1983)
460 A.2d 161
MORITZ NAPPE, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT,
v.
ANSCHELEWITZ, BARR, ANSELL & BONELLO, JOHN BONELLO & RICHARD BONELLO, DEFENDANTS-APPELLANTS AND CROSS-RESPONDENTS, AND PETER DENIGRIS, MARIO LATELLA, GEORGE DALEY, MICHAEL J. SANDOMENO, AVENEL BOULEVARD, INC., HOWARD C. PETERSEN, JAY HARRIS LATIMER, SAMUEL H. BALLAM, JR., FRED WOLFE, JR., ROBERT D. BERNHEIM, S. DAVIDSON HERRON, JR., MATTHEW B. WEINSTEIN & JAMES SMITH, AS TRUSTEES OF FIDELCO GROWTH INVESTORS, A BUSINESS TRUST EXISTING UNDER THE LAWS OF PENNSYLVANIA, MORTGAGE TRUSTS OF AMERICA, INC., A CALIFORNIA TRUST, DRIFTWOOD ASSOCIATES, INC., A NEW JERSEY CORPORATION AND JERSEY SHORE BANK AND PETER BIEL, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 8, 1982.
Decided March 29, 1983.
*350 Before Judges MILMED, MORTON I. GREENBERG and FURMAN.
Theodore W. Geiser argued the cause for appellants and cross-respondents (Connell, Foley & Geiser, attorneys; Theodore W. Geiser and John F. Neary of counsel; John F. Neary on the brief).
Kenneth C. Krause argued the cause for respondent and cross appellant (Dugan, Hughes, Finnerty & Krause, attorneys; Kenneth C. Krause on the brief).
The opinion of the court was delivered by FURMAN, J.A.D.
In this fraud action, appeal and cross-appeal are brought from a jury verdict of $2 in compensatory damages against defendant Anschelewitz, Barr, Ansell & Bonello, a professional association engaged in the practice of law, and against defendant Richard Bonello, a stockholder individually, and of $50,000 in punitive damages against defendant Richard Bonello individually. In response to written questions, the jury awarded $1 in compensatory damages for fraud in each of two separate transactions and $50,000 in punitive damages without allocation to either of the separate transactions. At the time of the transactions Anschelewitz, *351 Barr, Ansell & Bonello was a partnership, and Richard Bonello was a partner. Plaintiff cross-appeals from the dismissal of his claims for interest and counsel fees.
Among the multiple issues raised on the appeal and cross-appeal we view as decisive whether plaintiff's proofs established a prima facie cause of action in fraud in either transaction with defendants. Accordingly, we set out the facts in the light most favorable to plaintiff.
In 1973 plaintiff, then in his early seventies in age, had sold his plastic manufacturing business and was seeking opportunities to make investments and to be involved in real estate or business ventures. He met with principals of Avenel Boulevard, Inc. (Avenel), which was constructing a high-rise condominium apartment complex in Monmouth Beach, New Jersey. Avenel had secured a $6,300,000 construction mortgage from Fidelco Growth Investors (Fidelco). Plaintiff was taken to view the site. The principals of Avenel stated that they needed $200,000 to build and furnish a model apartment and asked plaintiff if he would invest that amount. A tentative agreement was reached that plaintiff would loan $200,000 towards the high-rise complex.
The president of Avenel introduced plaintiff to defendant Richard Bonello (Bonello), attorney for Avenel and trustee for the disbursement of the construction mortgage funds. Bonello proposed that, if plaintiff loaned $200,000 for the model apartment, he would receive 10% of the profits on the entire project. Bonello informed him that he had a financial interest himself. He represented that it was a "good project" with a projection of a $1,800,000 profit. Plaintiff was shown cost estimates.
On or about June 27, 1973 plaintiff entered into a loan agreement with Avenel and a separate agreement with Avenel and Fidelco. The closing was at Bonello's office. Plaintiff was represented by his own attorney. The loan agreement provided that plaintiff loan $200,000 to Avenel to be repaid by Fidelco upon assignment to plaintiff from Avenel, as the first disbursement *352 out of the retainage on construction advances, and that Avenel execute a note to him in that amount "bearing no interest for a period of one year with the right to renew for the period of time contained in the aforementioned Fidelco Growth Investors Mortgage." Plaintiff was to receive interest in the amount of 10% of the net profits to be paid by Avenel in consideration for the loan and "in lieu of periodic interest thereon." The loan agreement recited that a cost estimate had been provided to plaintiff, which was recognized to be "merely the initial estimate ... subject to variation and final audits." Although the loan agreement referred several times to the high-rise condominium apartment complex, it imposed no specific restriction on Avenel's use of the $200,000.
Prior to the closing of the loan agreement plaintiff had already advanced $75,000 to Avenel upon a representation by two of its principals that Avenel needed that amount for furnishings for the model apartment, which were being delivered C.O.D. Plaintiff's $75,000 check was deposited to the account of Driftwood, Inc., a corporation controlled by the Avenel principals.
Bonello deposited plaintiff's $125,000 check, which completed the $200,000 loan, in his law firm's trust account. Within the next two days Bonello issued five checks on the trust account disbursing the $125,000 together with $3,250 theretofore in the trust account, as follows: $69,500 to one of the principals of Avenel individually, $50,000 to an unsecured creditor of Avenel, $8,000 in two checks to Molly Company, a theatrical venture, and $750 in legal fees to his law firm.
About two or three weeks later plaintiff learned that the furniture for the model apartment had not been delivered and that work on it had been stopped because of lack of funds. The model apartment was completed and available for inspection by September 1973. Ultimately, after a conveyance from Avenel, Fidelco completed construction of the high-rise condominium apartment complex. During this litigation the trustees of Fidelco *353 reached a settlement with plaintiff for $260,000. Plaintiff failed to offer proof of any loss of profits suffered by Fidelco or Avenel as the result of the diversion of his $200,000 loan to purposes other than the building and furnishing of the model apartment or other than the use, in general, of the high-rise project.
In November 1973 plaintiff learned of the diversion of his initial $75,000 check and, shortly afterwards, of the diversion of his $125,000 check to other purposes. He filed a complaint against Avenel and its principals in January 1974, seeking damages and not rescission, and an amended complaint joining the defendants involved on this appeal, as well as the Trustees of Fidelco and others, in December 1974.
The second transaction between the parties for which compensatory damages in fraud were awarded to plaintiff occurred in August 1973. Bonello informed plaintiff that Driftwood, Inc. was in financial difficulties and that he could buy out its one-half interest in an office building on Memorial Parkway in Long Branch, New Jersey, for $26,500. ABAB Enterprises, which was controlled by some members of Bonello's law firm, owned the other one-half interest. Driftwood, Inc. and the law firm were tenants, both with leases providing for rent sufficient only to meet the mortgage and other fixed charges. Other tenants occupied several small stores on the ground floor. Although represented by his own attorney in acquiring a one-half interest in the office building, plaintiff was unaware of the so-called "sweetheart" leases to Driftwood, Inc. and to the law firm. He was also unaware of an outstanding judgment for liability, but not for damages, against a principal of Driftwood, Inc. Between the time of his acquisition of his one-half interest and the trial, plaintiff derived no rental or other income from the office building.
Plaintiff did not testify to any representation to him concerning income or profits from the office building or to any other inducement to purchase a one-half interest in it. His financial *354 statement of October 1973 listed the office building at an estimated market value of $150,000, encumbered by a mortgage of $90,000; his equity, thus, was estimated at $30,000. He introduced no subsequent appraisal or other evidence of market value of the office building.
The elements of a cause of action for damages in fraud are firmly established in the decisional law. As stated in Jewish Center of Sussex Cty. v. Whale, 86 N.J. 619 (1981):
A misrepresentation amounting to actual legal fraud consists of a material representation of a presently existing or past fact, made with knowledge of its falsity and with the intention that the other party rely thereon, resulting in reliance by that party to his detriment. See Foont-Freedenfeld v. Electro-Protective, 126 N.J. Super. 254, 257 (App.Div. 1973), aff'd 64 N.J. 197 (1974). [at 624-625]
Actual damages are an element of the cause of action in fraud or deceit. Nominal damages may not be premised upon the wrong itself, as in actions for assault, Singer Shop-Rite, Inc. v. Rangel, 174 N.J. Super. 442, 448 (App.Div. 1980), certif. den. 85 N.J. 148 (1980), or trespass to land, Kruvant v. 12-22 Woodland Ave. Corp., 138 N.J. Super. 1, 24 (Law Div. 1975), aff'd 150 N.J. Super. 503 (App.Div. 1977). In the absence of actual damages, nominal damages may not be awarded for fraud or deceit. Beik v. Thorsen, 169 Conn. 593, 363 A.2d 1030, 1031 (Sup.Ct.Err. 1975); Horner v. Flynn, 334 A.2d 194, 204 (Me.Sup.Jud.Ct. 1975); Day v. Avery, 548 F.2d 1018, 1029 (D.C. Cir.1976), cert. den. 431 U.S. 908, 97 S.Ct. 1706, 52 L.Ed.2d 394 (1977); Harris v. Penninger, 613 S.W.2d 211, 214 (Mo. Ct. App. 1981); Mumphord v. First Victoria Nat. Bank, 605 S.W.2d 701, 704 (Tex.Civ.App. 1980); Prosser, Law of Torts (4 ed. 1971), § 110 at 731-732; 1 Harper & James, Law of Torts, § 7.15 at 590-591 (1956); 37 Am.Jur.2d, Fraud and Deceit, § 283 at 377; but see Sands v. Forrest, 290 Pa.Super. 48, 434 A.2d 122, 124 (Super.Ct. 1981), and Monteleone v. Trial Pontiac, Inc., 395 So.2d 1003, 1004 (Ala. Civ. App. 1980). According to Prosser, supra:
Nominal damages are not awarded in deceit, and there can be no recovery if the plaintiff is none the worse off for the misrepresentation, however flagrant it may have been, as where for example he receives all the value that he has been promised and has paid for.... [at 731; footnote omitted]
*355 The equitable remedy of rescission on the ground of fraud may lie prior to accrual of actual damages, Jewish Center of Sussex Cty., supra, 86 N.J. at 626, but a tort action for damages in fraud requires proof of actual detriment, not necessarily liquidated damages but detriment susceptible to a jury's or other fact finder's evaluation in compensatory damages. For example, damages may be awarded in fraud for loss of the benefit of the bargain without out-of-pocket loss, Zeliff v. Sabatino, 15 N.J. 70 (1954), or for shame, humiliation and mental anguish consequent upon a fraudulently induced bigamous marriage, Morris v. MacNab, 25 N.J. 271 (1957), or for the reasonable expense of litigation to establish the invalidity of a fraudulently induced release, Hagen v. Gallerano, 66 N.J. Super. 319, 333 (App.Div. 1961).
Reliance by plaintiff is another necessary element of a cause of action for fraud. According to general decisional law, that reliance must have been justifiable, for example, when facts to the contrary were not obvious or did not provide a warning making it patently unreasonable that plaintiff not pursue further investigation, under the circumstances that the means for such further investigation were readily apparent and, if pursued, would reveal the falsity of the representation. Lockard v. Carson, 287 N.W.2d 871, 878 (Iowa Sup.Ct. 1980); Pacific Maxon, Inc. v. Wilson, 96 Nev. 867, 619 P.2d 816, 817 (Sup.Ct. 1980); Letellier v. Small, 400 A.2d 371, 376 (Me.Sup.Jud.Ct. 1979); Dickinson v. Dickinson, 305 Ill. 521, 137 N.E. 468, 470 (Sup.Ct. 1922); Federal Deposit Ins. Co. v. Lauterbach, 626 F.2d 1327, 1334 (7 Cir.1980); Theodosakis v. Austin Bank of Chicago, 93 Ill. App.3d 634, 49 Ill.Dec. 116, 417 N.E.2d 806, 811 (App.Ct. 1981); Sippy v. Cristich, 4 Kan. App.2d 511, 609 P.2d 204, 208 (Ct.App. 1980); Butts v. Dragstrem, 349 So.2d 1205, 1206-1207 (Fla.D.Ct.App. 1977), cert. den. 361 So.2d 831 (Fla.Sup.Ct. 1978); Prosser, supra, § 108 at 715-717; 2 Restatement, Torts 2d, §§ 537, 540, 541 at 80, 88-89 (1977), In Dickinson, supra, the Supreme Court of Illinois stated:
A party in possession of his mental faculties is not justified in relying on representations made, when he has ample opportunity to ascertain the truth of *356 the representations before he acts. When he is afforded the opportunity of knowing the truth of the representations, he is chargeable with knowledge. If one does not avail himself of the means of knowledge open to him, he cannot be heard to say he was deceived by misrepresentations. [137 N.E. at 470]
Applying the governing law defining the elements of a cause of action for fraud, we consider the sufficiency of plaintiff's proofs as to fraud in the Memorial Parkway office building transaction. Plaintiff does not urge that the property was not worth in fair market value what he paid for it. Nor was the failure to reveal the outstanding judgment for liability only against a principal of Driftwood, Inc. a material nondisclosure. By a subsequent judgment, without cost to plaintiff, that liability judgment was declared not to be a lien on the office building property.
Plaintiff offered no testimony of any inducement, such as an assurance of income; of any misrepresentation or concealment in response to any inquiry of his, or of his anticipating any level of rental income. He also offered no appraisal or other testimony of the fair rental value of the space occupied by Bonello's law firm or by Driftwood, Inc.
Plaintiff's theory of a cause of action for fraud in this transaction is as follows. He bought a one-half interest in a rental property anticipating a share of rental income in return. Defendant Bonello was aware of the so-called "sweetheart" leases but failed to disclose them, intending that plaintiff rely on that non-disclosure. Because of the "sweetheart" leases plaintiff has derived no income or profits whatsoever from his investment of $26,500. If he had known of the "sweetheart" leases, he would not have purchased his one-half interest in the office building.
As presented by the trial judge in his charge, the jury was to determine if there had been actionable fraud in the Memorial Parkway office building transaction by "withholding of information", and, if so, to consider nominal damages if "you don't agree that interest under all the circumstances of the transaction should be awarded...." The jury charge was plainly in error in permitting a jury award of nominal damages.
*357 We conclude that plaintiff's proofs failed to establish a prima facie case of fraud in the Memorial Parkway office building transaction warranting submission of that claim to the jury. The nondisclosed fact of the so-called "sweetheart" leases was obvious to plaintiff or would have been upon limited further investigation which the circumstances justified. He had visited Bonello's law firm's offices regularly on business for two months or more. He knew that the two owners, Driftwood, Inc. and ABAB Enterprises, were themselves, or were closely affiliated with, the major tenants in the office building, the only tenants other than several ground floor stores. Prior to closing plaintiff made no inquiry as to the terms of the two major leases. He was represented by his own attorney in the transaction.
Even assuming a finding of reliance by plaintiff upon a material nondisclosure by defendant Bonello in this transaction, the proofs did not support a finding that plaintiff's reliance was justifiable or other than patently unreasonable under all the circumstances. Two elements of actionable fraud were missing in plaintiff's proofs as to this transaction: justifiable reliance and actual detriment. We reverse the award of compensatory damages of $1 against both defendants for fraud in the Memorial Parkway office building transaction.
Because of this holding we are also constrained to reverse the jury award of $50,000 in punitive damages against defendant Bonello individually. Punitive damages were unallocated and unsegregated between the fraud claims arising out of the Memorial Parkway office building and the Avenel high-rise condominium complex transaction. There is no basis for now dividing or otherwise apportioning punitive damages.
We take a different view of the sufficiency of the proofs supporting plaintiff's cause of action for compensatory damages for fraud in his loan of $200,000 towards the high-rise condominium project. We sustain their sufficiency.
In the most favorable view of the proofs for plaintiff, he was induced to advance $200,000 interest-free upon a misrepresentation *358 by defendant Bonello of his intention to use that amount for the purpose of the high-rise complex; defendant Bonello knew of the falsity of that representation but intended that plaintiff rely on it; plaintiff relied in fact; his reliance was justifiable, and plaintiff suffered detriment because of his loss of interest on the $200,000.
Plaintiff failed to establish any causal relationship between the diversion of his $200,000 to purposes other than the high-rise complex and the ultimate failure of the project to achieve the anticipated profits. The trial judge instructed the jury that it could not make an award of compensatory damages for loss of profits. We agree with that instruction.
The trial judge also instructed the jury that: "Insofar as the loan-investment, $200,000, you are not to consider interest." He then continued:
... if you find that there was actionable conduct on the part of the defendant and you reasonably believe that he sustained damages, but they are not computable, as I have already indicated, but you feel that there has been sufficient evidence that he was damaged, you should in light of the questions I would submit if you so find, enter an award of nominal damages.
Now, what does that mean?
Well, it means either you can insert within there six cents, or you could insert a dollar, but they are strictly nominal damages....
We conclude that the trial judge erred both in instructing the jury that it could award nominal damages without actual damages, and in barring a jury award of damages for loss of interest, if the jury found that plaintiff was fraudulently induced to make a loan which was interest-free over an extended period of time. Even in the absence of specific proof, the jury could have awarded interest, pursuant to instructions, at the legal rate of interest. Because of error in the jury charge we are constrained to reverse the award of compensatory damages of $1 against both defendants for fraud in the high-rise condominium complex transaction and to remand for a new trial on this claim.
*359 On appeal defendants contend that any obligation to pay interest to plaintiff on his $200,000 loan was, by contract, not theirs. But this contention mistakes the purpose and effect of the remedy in fraud, that is, to impose tort liability for damages in tort against a defrauder. Any verdict against defendants for compensatory damages can be molded to reflect a pro rata contribution by the settling defendant Fidelco. Theobold v. Angelos, 40 N.J. 295 (1963).
Defendant Bonello also argues on appeal that he was acting as attorney for Avenel in diverting the proceeds of plaintiff's $200,000 loan and owed no independent duty to plaintiff. We disagree. Under the proofs there was ample supporting evidence of Bonello's personal, rather than exclusively professional, involvement in the high-rise complex transaction, specifically that he misrepresented his intention to divert plaintiff's $200,000 from the use of the high-rise complex, in part for his own benefit.
We reject as groundless these additional issues raised on appeal and cross-appeal: that the trial judge should not have permitted interrogation of Bonello as to the disbursement of plaintiff's check for $125,000; that plaintiff's claim is barred by the statute of frauds, estoppel and waiver; that plaintiff's claim on the high-rise apartment complex transaction is essentially a breach of contract claim and, as such, he is not entitled to recover punitive damages; that the trial court erred in dismissing defendants' counterclaim for defamation; that defendants' motion for a change of venue should have been granted; and that plaintiff was entitled to counsel fees as an element of damages. In view of our partial remand we need not resolve the issues of error in terminating plaintiff's re-cross examination and of excessiveness of the punitive damage award.
We reverse the award of compensatory damages of $1 against both defendants for fraud in the Memorial Parkway office building transaction and remand for the entry of a judgment dismissing the claim for damages for fraud in that transaction. *360 We reverse the award of punitive damages of $50,000 against defendant Bonello. We reverse the award of $1 against both defendants for fraud in the high-rise condominium complex transaction and remand for a new trial on that claim against defendant Anschelewitz, Barr, Ansell & Bonello on the issues of liability and compensatory damages for fraud in that transaction and for a new trial against defendant Bonello on the issue of liability, compensatory damages and punitive damages for fraud in that transaction. We do not retain jurisdiction.