GILBERT C. MITCHELL, Plaintiff-Appellee, *v.* DONALD A. PETERSON, Defendant and Counterplaintiff-Appellant.—(KENNETH A. MICHAELS, Counterdefendant-Appellee.)

First District (5th Division)   No. 79-1981

Opinion filed June 12, 1981.

364

J. Chris Goodman and Nancy Carper, both of Chicago (Brown, Goodman, & Carper, of counsel), for appellant.

William R. Ver Huel, of Stansell & Rahn, of Chicago, for appellee.

Mr. JUSTICE LORENZ delivered the opinion of the court:

This appeal arises from an action brought by plaintiff, Mitchell, the payee of a promissory note, against defendants, Peterson and Michaels, co-guarantors of the note, after the maker defaulted on the third annual installment of the four-year instrument. After a bench trial, the court found that defendants were released from their guaranty concerning the third installment, due April 1, 1977, since the maker of the note, and Mitchell agreed to an extension of time for the payments of that installment.

Defendants were held liable, however, for payment of the fourth or final payment due on April 1, 1978. The court further found that Michaels and Peterson executed an indemnity agreement concerning the note in question, and ordered Michaels to pay Peterson the money owed Mitchell under the note. Peterson was awarded $622.50 for attorneys' fees and $27 in court costs against Michaels pursuant to the indemnity agreement.

Peterson appeals from the trial court's finding concerning his liability for payment of the fourth installment, and from the findings with respect to the amounts of attorneys' fees and costs awarded him. He contends that: (1) the trial court erred in finding that he was not entitled to a complete discharge as a guarantor from liability under the note, since the extension of time for payment of the third installment was made without his knowledge and consent; and (2) the trial court's award of attorneys' fees and costs was erroneous in that it did not include all such expenses incurred, as provided by the indemnity agreement.

Plaintiff cross-appeals from the court's finding which releases defendant from liability for payment of the third installment. He contends that

the agreement to extend the period of payment for that installment was not supported by any consideration and that the guarantors therefore remained liable for the amounts due thereunder, as well as for those due under the last installment.

On April 4, 1974, Mitchell entered into a stock redemption agreement with Prairie State Cold Storage Ltd. (Prairie State) by its vice-president and treasurer, Michaels. The agreement provided that Prairie State would redeem its $15,000 promissory note and all of plaintiff's 250 shares of stock in the company for the sum of $19,000. This $19,000 amount was to be paid by a promissory installment note, which was issued on April 1, 1974, by Prairie State to Mitchell bearing interest at 6% per annum and payable in four annual installments of $4,750 and accumulated interest. The installments were due on April 1, 1975, April 1, 1976, April 1, 1977, and April 1, 1978.

Along with the note, a separate guaranty agreement was entered into on April 4, 1974, by Mitchell with Michaels and Peterson, also share-holders in the company. In consideration of Mitchell entering into the stock redemption agreement, Peterson and Michaels agreed jointly and severally to guaranty the performance of Prairie State with regard to the stock redemption agreement, including without limitation, prompt payment of the note in question.

The installment due on April 1, 1975, was paid by Prairie State without incident.

No payment was made on the next installment due on April 1, 1976. However, Peterson and Michaels had each written letters on March 31, 1976, requesting that Mitchell extend the time for payment of the April 1, 1976, installment. Mitchell's attorney responded to defendants by letters dated April 12, 1976, April 23, 1976, and May 3, 1976, which proposed a rescheduling of payments for the April 1, 1976, installment. The letters outlined a revised payment plan in which payments were due in varying amounts starting in April with additional payments due on the first day of May, June, July and August of 1976. Mitchell's letters requested defendants' signatures and specifically provided that his acceptance of the new payment plan was conditioned upon their continued liability according to their agreement to personally guarantee the note. Neither Michaels nor Peterson signed any of the letters, but payment was tendered in full to Mitchell in accordance with the altered schedule of payments.

The installment due on April 1, 1977, was likewise not paid when due. Shortly thereafter, Mitchell called Michaels requesting payment, and the latter stated that payment was impossible due to lack of funds. The two agreed to meet at a restaurant to discuss rescheduling of this installment. At the meeting, Mitchell proposed to Michaels a handwritten schedule of payments similar to that proposed in 1976. According to Michaels, this

new schedule, which was introduced into evidence at trial, reflected the agreement they reached concerning payment of the 1977 installment. Mitchell considered this schedule only as a proposal, which was subject to written confirmation. Peterson had no knowledge of the meeting between Mitchell and Michaels or of any payment schedule other than the one set forth in the note. The new schedule proposed the following payments:

| | |
|---|---:|
| Installment due 4-1-77 | $1,000.00 |
| Interest due | (570.00) |
| | $1,570.00 |
| Installment due 5-1-77 | $1,000.00) |
| Interest due | (18.75) |
| Installment due 6-1-77 | $1,000.00 |
| Interest due | (13.04) |
| Installment due 7-1-77 | $1,000.00 |
| Interest due | (8.91) |
| Installment due 8-1-77 | $ 795.46 |
| Interest due | ( 3.96) |

Two of the payments proposed in Mitchell's schedule were, in fact, paid to him by check: one for $1,570 on May 2, 1977, and another on May 23, 1977, for $1,000. Notice of default for the third annual payment was served on defendants on May 3, 1977, and judgment was entered against Prairie State on the note for the total amount due of $8,070. Demand was made upon defendants to perform their personal guarantees, but they refused.

On October 12, 1977, plaintiff filed suit against defendants to perform their guaranties. Peterson later filed a counterclaim against Michaels seeking indemnity for any liability to Mitchell arising from the note in question based upon a separate indemnity agreement executed between Michaels and Peterson on April 28, 1976. Following a bench trial in which the claim on the note and the counterclaim were litigated, the trial court entered the order from which the parties appeal.

OPINION

We first turn to the propriety of the trial court's finding with regard to Peterson's liability for the third installment due April 1, 1977. Peterson argues that the trial court's finding of his liability for this installment was erroneous since Mitchell and Michaels agreed to extend the time of payment for the 1976 and 1977 installment without his consent, and this discharged his liability as a guarantor of the note. Mitchell maintains that there was no evidence of a binding extension agreement supported by consideration that mandates this result.

■■ It is undisputed that in order for a guarantor to be discharged in such a situation, there must be a binding extension agreement between the creditor and the principal debtor, entered into without the knowledge and consent of the guarantor, founded upon a valuable consideration, for an extension of time for a definite period, whereby the creditor's hands are tied so that he cannot proceed to collect for the principal until the expiration of the time granted to him. (*Many, Blanc & Co. v. Jacobson* (1909), 149 Ill. App. 240.) As to the 1976 installment, we initially note that Peterson cannot claim that the payment extension arrangement was made without his knowledge and consent. It is a familiar exception to the general doctrine relieving the guarantor from liability by reason of a change in the obligation assumed, that the doctrine has no application where the obligor has knowledge of and assents, either expressly or by implication, to such change. (*Bank of Commerce v. Riverside Trails* (1977), 52 Ill. App. 3d 616, 367 N.E.2d 993.) In this case, Peterson solicited an extension of the 1976 installment from Mitchell by his letter of March 31, 1976. Thus, he is estopped by his conduct from claiming that an extension was made for that installment without his authorization. The question then becomes whether the 1977 extension agreement was a valid, binding agreement supported by adequate consideration.

For an extension of the payment of a note to be binding on the parties, it must be for a definite period and must be supported by consideration. (*Amberg v. Natchway* (1900), 92 Ill. App. 608.) Peterson maintains that consideration supporting the extension agreement for the 1977 installment is supplied by $45.46 in additional interest charged by Mitchell to the debtor "over and above" that due under the note. This figure was computed at trial by totalling the amounts of interest charged under the revised payment plan for 1977 at a 6% rate. Peterson offered these figures into evidence as a defense exhibit. It disclosed the following:

Payment due on note April 1, 1977

| | | |
|---|---|---|
| Principal | | $4,750.00 |
| Interest on $9,500 at 6%/annum from 4/1/76 to 4/1/77 | | 570.00 |
| Total due | | $5,320.00 |

Extended payment scheduled agreed to by Kenneth A. Michaels of Prairie State Cold Storage, Ltd. and Gilbert C. Mitchell

Payments

| | | |
|---|---|---|
| April 1, 1977 | $1,000.00 | |
| Interest | (570.00) | $1,570.00 |

| May 1, 1977 | $1,000.00 | $1,000.00 |
| Interest | ( 18.75) | |
| June 1, 1977 | $1,000.00 | $1,000.00 |
| Interest | ( 13.04) | |
| July 1, 1977 | $1,000.00 | $1,000.00 |
| Interest | ( 8.91) | |
| August 1, 1977 | $ 795.46 | $ 795.46 |
| Interest | ( 3.96) | |
| Total | | $5,365.46 |
| Less | | 5,320.00 |

Additional interest paid to Mitchell
by Prairie State Cold Storage, Ltd.                                    $    45.46
for extension

These computations, however, ignore a provision in the installment note which sets forth that, "any installments of principal not paid when due shall bear interest after maturity at the rate of seven per cent per annum." Interest due on the respective dates according to the 7% rate would be as follows:

| May 1, 1977 | $ 21.87 |
| June 1, 1977 | 16.04 |
| July 1, 1977 | 10.20 |
| August 1, 1977 | 4.37 |
| Total | $ 52.48 |

Accordingly, Peterson was authorized under the terms of the note to charge up to $52.48 in interest for the delinquent installment that was due in April of 1977. Therefore, the $45.46 in interest contemplated under the revised payment schedule was not "additional interest" providing consideration for the extension agreement.

■■ We believe that the extension arrangement for the 1977 installment was no more than an act of leniency by the creditor, Mitchell, and was unsupported by consideration. First, we note that the testimony is conflicting as to whether an agreement was ever, in fact, reached. But even if we are to assume that Mitchell and Michaels agreed to the new schedule of payments, there is no indication that Michaels was required to retain the money for the entire extension period. Nor was there evidence that he was found to pay the interest for the entire period whether he retained the money for that length of time or not. Likewise, the agreement is silent as to whether Mitchell could ignore the schedule and bring suit for full payment at any time. For these reasons, the agreement lacked mutuality of obligation and was not binding.

Our supreme court recognized in *Crossman v. Wohlleben* (1878), 90

Ill. 537, that an agreement of this nature will not operate to discharge a surety from liability. The court stated:

> "A mere promise made by a creditor to indulge the debtor for a given length of time, upon the payment of interest, does not bind him to such extension, because the payment of interest is already secured by the terms of the original note for any delay that may occur from any indulgence that might be given; and unless the debtor is also bound by the contract to retain the money for a given length of time, and to pay the interest for that period whether he retains the money that length of time or not, such promise by the creditor lacks consideration, and is not binding upon either party."
> *Crossman*, 96 Ill. 537, 542.

In *Crossman*, the court found that consideration to support a valid extension agreement was not supplied by a mere promise of indulgence on payment of interest at the rate named in the note, or at any other rate, since nothing bound the debtor to pay interest for a given time. A promise by the debtor to keep the money for a given time and pay interest for that time, or the payment of interest in advance would have served to bind the parties to the agreement.

*Crossman* was cited with approval in *Theodosakis v. Austin Bank* (1981), 93 Ill. App. 3d 634, 417 N.E.2d 806, a recent appellate court opinion from this district. There, plaintiffs executed a promissory note payable to defendant bank in the principal amount of $227,000 due on demand after date and bearing 8½ percent interest. The parties had orally agreed at the time of execution that monthly principal payments in the amount of $2,000 plus interest on the principal balance due would be paid on the note; no agreement was reached as to the duration of the repayment plan. Months later, plaintiffs requested a modification in the payment plan since the original arrangement was financially burdensome. The bank sent plaintiffs a letter pursuant to an agreement they had reached on December 20, 1974, stating that plaintiffs would be billed $2,000 a month to be applied against the principal and interest starting on January 20, 1975, and each month thereafter. The agreement also contemplated additional lump sum principal reductions by plaintiff upon the successful sale of certain properties.

Monthly payments were made for about five years according to the terms of this letter. Then, the bank had plaintiffs execute a renewal note for $141,708.93, which differed from the terms of the letter in that it provided for payment "on demand but not later than August 20, 1980," and the interest rate was changed from 8½ per cent to the "prime" rate. A dispute later arose as to whether the bank was bound by the terms of the December 20, 1974, letter or the renewal note.

Plaintiff contended on appeal that the modification agreement of

December 20, 1974, converted the original demand note into an installment note and was supported by consideration. The bank claimed that the purported modification agreement lacked consideration, since the parties were not mutually bound by the arrangement. The court sustained the bank's position, stating:

> "Similar to *Crossman*, the letter (in the instant case) dated December 20, 1974, does not indicate that plaintiffs bound themselves to keep the money and pay the interest upon it for any specified time, or that they paid interest in advance. Plaintiffs merely requested the bank to accept a lesser sum per month at the same rate of interest as required by the original note. The letter of December 20, 1974, did not bind plaintiffs to retain the money for any certain period of time. Consequently, the promise of the creditor lacks consideration and is not binding on either party. *Crossman v. Wohlleben.*
>
> Had plaintiffs repaid this debt early, there is no indication in the letter of December 20, 1974, that they would have been required to pay interest beyond the date of full repayment." *Theodosakis*, 93 Ill. App. 3d 634, 640, 417 N.E.2d 806, 811.

The 1977 extension agreement fails in the instant case under the rationale of *Crossman* and *Theodosakis*, for lack of consideration. As we have discussed, Peterson only offers the $45.46 interest figure as the consideration supporting the agreement—an amount *less* than that to which Mitchell was entitled under the original note. Michaels neither promised to retain the money for the entire extension period, nor to pay the entire amount of the proposed interest upon prepayment.

Because the modification agreement for the 1977 installment lacked valuable consideration, the trial court erred in releasing the co-guarantors from liability for its payment.

Peterson also contends that the trial court erred in granting only a *pro tanto*, or partial discharge from the 1977 installment, by requiring his payment of the final installment due April 1, 1978.

We have determined that the trial court erroneously discharged Peterson from liability for the 1977 installment. Therefore, it is unnecessary to decide the question of whether a partial release would have served to completely discharge Peterson from any remaining payments. He, of course, is liable for the final installment since his obligations as a co-guarantor remain unchanged as a result of the purported modification agreement. In sum, both Peterson and Michaels are liable for the third and fourth installment of the note.

Finally, Peterson contends that the trial court abused its discretion in awarding him only $622.50 in attorneys fees and $27.00 as costs.

Peterson and Michaels executed an indemnity agreement on April 28,

1976, which was introduced into evidence as a defense exhibit. Paragraph 6(d) of the agreement provides:

> "From the date hereof until the date all of said releases have been delivered, PURCHASER [Michaels] shall indemnify SELLER [Peterson] and his wife and hold them harmless of and from any and all liability of whatever kind or nature to * * * GILBERT C. MITCHELL with respect to the indebtedness of PRAIRIE STATE and GILBERT C. MITCHELL, including costs, expenses and attorneys' fees."

Relying on this provision, Peterson sought from Michaels the attorneys' fees, costs and expenses he incurred in the defense of Mitchell's claim and the prosecution of the counterclaim. Peterson's attorney submitted an affidavit to the trial court reflecting that 77.25 hours of services were expended at a rate of $30 per hour, amounting to $2,317.50 in attorneys' fees. The affidavit showed costs (filing fees, subpoena fees, deposition expenses, court reporter fees, etc.) to be $818.98. Therefore, total costs and fees were $3,136.48.

The record does not reveal how the trial court determined the amount of attorneys' fees and costs it awarded to Peterson. The order appealed from apparently recognizes that Peterson was entitled to fees and expenses under his indemnity agreement with Michaels. Yet, the trial judge's only remarks in this regard were made to Peterson's attorney at the conclusion of his ruling on the merits of the case. He stated:

> "Your attorneys' fees will not be that great. You may submit by affidavit such as you please, and if it is a reasonable figure it will be all right."

It appears that the trial court, applying a reasonableness standard, found the attorneys' fees and costs submitted to be unreasonable and reduced them to the amounts set forth in the aforementioned order.

Generally, an indemnity contract covers all losses, damages or liabilities which were reasonably within the contemplation of the parties. (*Burns v. Ford Motor Co.* (1974), 29 Ill. App. 3d 585, 331 N.E.2d 325.) Recovery may be had for the costs and expenses of litigation, including attorney's fees, where such items are within the contemplation of the parties as revealed by a reasonable construction of the contract of indemnity. *Reese v. Chicago, Burlington & Quincy R.R. Co.* (1972), 5 Ill. App. 3d 450, 283 N.E.2d 517, *affirmed* (1973), 55 Ill. 2d 356, 303 N.E.2d 382.

■■ The agreement at issue provides for the indemnitor's liability for the indemnitee's indebtedness "including costs, expenses and attorney's fees." The very essence of an indemnity agreement is to hold the indemnitee harmless and completely relieved of liability according to the terms of the agreement. (*Gatto v. Walgreen Drug Co.* (1974), 23 Ill. App. 3d 628, 320

N.E.2d 222.) Viewed in this light, we believe that Michaels agreed to indemnify Peterson for all the attorneys' fees and costs reasonably and necessarily incurred in the litigation concerning the latter's obligation under the note.

The affidavit for fees and expenses provided by Peterson's attorney was not objected to by Michaels at the trial court. Michaels has filed no brief on appeal that disputes these amounts. The affidavit was specific in terms, listing the services performed on each date, along with an hourly breakdown for every activity. A reasonable rate of $30 per hour was charged for the services. In addition, bills were attached verifying the costs of the suit. The only indication of the trial court's reasoning for reducing the fees and expenses is found in his comments made prior to the submission of the attorney's affidavit, where he expressed that the fees would not be "that great."

Based upon these facts, we hold that the trial court abused its discretion in arbitrarily rejecting the Peterson figures, and setting fees and expenses at an amount far below what the uncontroverted evidence shows. The court's total award to Peterson of $649.50 was even less than his costs of $819.98, which were documented by paid bills. These alone serve as prima facie evidence of the necessity and reasonableness of the services rendered. (See *Ross v. Cortes* (1981), 95 Ill. App. 3d 772, 420 N.E.2d 846.) The indemnity agreement contemplates remuneration for *all* attorneys' fees and costs expended. Implicit in this agreement, of course, is the understanding that the indemnitor is not liable for needless expenses capriciously amassed by the indemnitee. For these reasons, the trial court's findings with respect to fees and costs are hereby vacated. The cause is remanded for further proceedings to determine the fees and costs as were reasonably and necessarily incurred in the litigation by Peterson, and to award the same consistent with this determination.

Accordingly, this cause is affirmed in part, reversed in part and vacated and remanded in part as to attorneys' fees and costs.

Affirmed in part; reversed in part; vacated and remanded with directions.

SULLIVAN, P. J., and MEJDA, J., concur.