[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION DEFENDANTS' CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT
The plaintiffs, Julie K. Mark[1] and Taylor Mark,[2] are the widow and child respectively of the late Brian D. Mark (the decedent). On May 24, 1994, the decedent purchased from Lomac East, Ltd. (Lomac), an authorized dealer of Deere Company (Deere) equipment, a John Deere Model 5200 tractor with a post-hole digger attachment. Deere manufactured the John Deere Model 5200 tractor. Amerequip Corp. (Amerequip) manufactured the post-hole digger attachment.
On August 7, 1994, the decedent sustained fatal injuries while using the John Deere Model 5200 tractor with the post-hole digger attachment. Apparently, the decedent, while standing against an existing wire fence, became entangled in the fence when the post-hole digger engaged a wire. With his leg entangled, the decedent was dragged toward the auger and impaled. Julie K. Mark was operating the tractor at the time and the decedent's child witnessed the accident.
The plaintiffs filed the present action against Deere and CT Page 11409 Lomac on August 9, 1996, claiming violation of General Statutes § 52-572m et seq., loss of consortium and bystander emotional distress.
On March 18, 1997, Deere filed a third-party complaint against Amerequip. The plaintiffs filed an amended complaint on April 18, 1997, adding Amerequip as a party defendant. Deere filed an amended third-party complaint on October 15, 1998 wherein Deere claims that it is entitled to indemnification (count one), contribution (count three) and a declaratory judgment (count four). It also alleges breach of contract against Amerequip (count two) for failing to obtain insurance and failing to defend Deere in the present lawsuit under the terms of a supply agreement between the parties. Lomac filed its own cross-claim against Amerequip on August 6, 1997 bringing claims of indemnification (count one), breach of contract (count two),[3]
and contribution (count three).
The third-party actions arise out of a supply agreement entered into by Deere and Amerequip on August 21, 1985. The parties have agreed that Illinois law controls the interpretation of the terms of the contract.
Pending before the court are Deere's motion for partial summary judgment against Amerequip on counts one, two and four of its third-party complaint; Amerequip's motion for partial summary judgment as to count two of Deere s third-party complaint; and Lomac's motion for partial summary judgment as to counts one and two of its cross claim against Amerequip.
 I.
Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Internal quotation marks omitted.) Serrano v. Burns,248 Conn. 419, 424, ___ A.2d ___ (1999), quoting Practice Book § 17-49, formerly § 384.
"In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts." (Internal quotation marks omitted.) Serrano v. Burns, supra, 424. CT Page 11410
 II.
All three parties to the present motions have agreed that the supply agreement should be interpreted in accordance with Illinois law. In the absence of misrepresentation, undue influence or mistake, Connecticut courts will give effect to the express choice of law of parties to a contract if it is made in good faith unless the chosen state has no substantial relationship to the parties and the application of the chosen state's law would act contrary to a fundamental policy of a state which has a materially greater interest. See Elger v. Elger,238 Conn. 839, 845 n. 7, 848, 679 A.2d 937 (1996). The evidence does not indicate any reason why the court should not apply Illinois law. Illinois is the principal place of business of one of the parties. In addition, the application of Illinois law to the interpretation of this contract is not contrary to a fundamental policy of this state.
 III. A.
Deere and Lomac argue in their respective memoranda in support of their motions for partial summary judgment that the terms of the supply agreement provide that Amerequip must defend and indemnify them for "any and all liability," including the negligence of Deere and Lomac, and any product liability imposed upon them. Amerequip claims that the indemnification clause in the supply agreement does not require Amerequip to indemnify Deere or Lomac for their own tortious conduct. Amerequip insists that since the indemnification clause does not include the negligence of Deere or Lomac, summary judgment on the issue of indemnification is unwarranted. Amerequip argues that there are sufficient facts to indicate that both Deere and Lomac may have been negligent in their own instructions and warnings concerning the post-hole digger.
The supply agreement, in relevant part, states: "Amerequip agrees, now and hereafter, to defend, protect, hold harmless and indemnify Deere, its subsidiaries and associates, their successors, assigns, employees, agents and contract dealers from and against any and all liability for injury, loss or damage of any kind, (including, but not limited to, injury, loss or damage resulting from inspection, loss of use, fines, penalties, CT Page 11411 administrative or governmental action) whether direct or consequential, compensatory or punitive, which results from anyact, error or omission of Amerequip and/or any materials, workmanship, designs or instructional and promotional literature (supplied by Amerequip) connected with, applied to, or used in, the manufacture, packaging, delivery, and/or installation of Products." (Emphasis added.)
Deere and Lomac argue that the use of "any and all" within an indemnification clause is sufficient to include the negligence of the indemnitees and cite Freislinger v. Emro Propane Co.,99 F.3d 1412 (7th Cir. 1996) (applying Illinois law); Economy MechanicalIndustries, Inc. v. T.J. Higgins Co., 294 Ill. App.3d 150, 155,689 N.E.2d 199 (1997); Rios v. Field, 132 Ill. App.2d 519, 522,270 N.E.2d 98 (1971); and Russell v. Shell Oil Co., 339 Ill. App. 168,89 N.E.2d 415 (1949), in support of this argument. Amerequip contends that the terms of this indemnification clause exclude indemnification for the indemnitees' own negligence.
It is the "very essence of an indemnity agreement . . . to hold the indemnitee harmless and completely relieved of liability according to the terms of the agreement." Mitchell v. Petersen,97 Ill. App.3d 363, 371, 422 N.E.2d 1026 (1981). "Illinois law does not require indemnity contracts to contain an express provision providing for the coverage of the indemnitee's own negligence in order for them to be enforceable. Instead, it contains the more commonplace rule that indemnity provisions, when ambiguous, will not be interpreted in this way." Freislingerv. Emro Propane Co., supra, 99 F.3d 1420. Unless there is an ambiguity, the language of the contract governs. See id. "[A] general reference to `any and all' claims, losses, injuries, and the like, will generally be construed as indicating an intention by the parties that the indemnitee be indemnified for damages resulting from the indemnitee's own negligence." EconomyMechanical Industries, Inc. v. T.J. Higgins Co., supra,294 Ill. App.3d 155.
The court finds that there is no ambiguity in the indemnification clause in the present case. Rather, the language of the clause explicitly limits Amerequip's liability for any defective products to only "act[s], error[s] or omission[s] of Amerequip" and materials, workmanship, designs or instructional and promotional literature (supplied by Amerequip). . . ." Both Deere and Lomac focus upon the agreement to defend and indemnify them from "any and all liability for injury, loss or damage of CT Page 11412 any kind . . . ." Deere and Lomac ignore the explicit limiting language contained in the same sentence subsequent to the language mentioning "loss or damage of any kind." Ignoring this subsequent language is contrary to the meaning of the indemnification clause since Amerequip clearly limited its liability to its own conduct.
The cases that Deere and Lomac cite are distinguishable from the present case. For example, in Freislinger v. Emro PropaneCo., supra, 99 F.3d 1420, the indemnity clause in that case included "any and all claims . . . connected with or arising out of the use of [the] storage tank or with the use of propane gas." Similarly, each of the indemnity clauses in the Illinois cases that Deere and Lomac rely upon include analogous broad and inclusive language.[4] None of them include the limiting language found in the indemnity agreement in the present case.
Next, the court must consider whether there are issues of fact concerning any negligence attributable to Deere and Lomac. Amerequip cites numerous examples which indicate that Deere and Lomac may have some responsibility for the underlying injuries to the plaintiffs. Amerequip contends that Lomac provided improper instructions concerning the proper use of the tractor and post-hole digger.[5] Amerequip also notes that Lomac attached the optional guide bar for the post-hole digger. Since Lomac would be responsible for the plaintiffs' injuries if the trier of fact determines that Lomac's inadequate training or assembly of the guide bar caused their injuries, the court denies Lomac's motion for summary judgment as to counts one and two of its cross claim.
Similarly, Amerequip indicates that there are several issues of fact concerning Deere's alleged tortious conduct, including the placement and content of its warning decals, and Deere's failure to test the compatibility of the post-hole digger to the Model 5200 tractor. Since these allegations present issues for the trier of fact, the court denies Deere's motion for summary judgment as to count one of its third-party complaint.
 B.
Deere moves for summary judgment as to count two of its third-party complaint alleging breach of contract because Amerequip failed to purchase insurance to cover Deere for Deere's own negligence pursuant to the supply agreement. Deere insists CT Page 11413 that the words "for the mutual benefit" indicate that the parties intended for Amerequip to purchase insurance that covers even Deere's independent acts of negligence, and such language could have no other reasonable meaning. Deere further argues that Amerequip only purchased insurance for Amerequip's own benefit. Amerequip filed a cross-motion for summary judgment against Deere as to this count claiming that Deere waived its right to insurance under the supply agreement. Amerequip also argues that the agreement to insure is unenforceable because it did not expressly provide that Deere would be a named insured, nor that Amerequip would insure Deere for Deere's own negligence.
The supply agreement states in relevant part: "Amerequip, at its sole expense, agrees to purchase and maintain product and completed operations liability and blanket contractual liability insurances (providing coverage at least equivalent to that under the rating bureau's standard comprehensive general liability policy) for the mutual benefit of Amerequip and Deere, in amounts to be mutually agreed upon from time to time but with limits not less than $5,000,000 per occurrence and in the aggregate annually for bodily injury and property damage, and subject to a deductible by Amerequip of $50,000. . . ." The agreement also provides that Amerequip would purchase a current certificate of insurance evidencing compliance with the terms of the agreement, and, if Amerequip failed to purchase said insurance, Deere may purchase such insurance and then charge Amerequip for it.
 1.
Amerequip argues that Deere waived its right to insurance. "Waiver is an express or implied voluntary and intentional relinquishment of a known and existing right. . . . An implied waiver may arise from either of two situations: (1) an unexpressed intention to waive can be clearly inferred from the circumstances, or (2) the conduct of one party has misled the other party into a reasonable belief that a waiver has occurred." (Citations omitted.) Batterman v. Consumers Illinois Water Co.,261 Ill. App.3d 1235, 634 N.E.2d 1235, 1236 (1994). In order to prove an implied waiver, the party claiming the waiver must demonstrate "a clear unequivocal, and decisive act of the [waiving] party showing such a purpose." Kane v. AmericanNational Bank Trust Co., 21 Ill. App.3d 1046, 316 N.E.2d 177,182 (1974).
Amerequip asserts that Deere has waived any right it had to CT Page 11414 insurance because Deere has failed to introduce any evidence that it asked to review or inquired about the terms of the insurance policy in the nine years between the execution of the supply agreement and the plaintiffs' injuries. In addition, Amerequip notes that Deere failed to exercise its option to purchase the requisite insurance, and then charge Amerequip under the terms of the supply agreement. This court holds that Amerequip has failed to demonstrate that there is no genuine issue of material fact concerning whether Deere intended to waive the insurance provision in the supply agreement or that Deere's conduct mislead it. While Deere's conduct may demonstrate inaction, a failure to exercise its option to purchase insurance and charge Amerequip for such insurance does not indicate that Deere waived its right to insurance under the contract. According to the terms of the insurance provision of the supply agreement, Deere "may, at its sole option" purchase insurance and charge Amerequip if Amerequip failed to purchase the requisite insurance. The failure to exercise this option does not constitute a waiver of Amerequip's duty to procure insurance "for the mutual benefit" of Deere and Amerequip.
In addition, Amerequip has failed to demonstrate that Deere knew that Amerequip failed to purchase insurance with Deere as an insured. Instead, Amerequip demonstrates the mere inaction of Deere regarding the insurance provision. The Illinois Appellate Court has held that a contracting party should not be able to avoid a contractual provision until the other party notices the defect, and then argue that a waiver has occurred. See Battermanv. Consumers Illinois Water Co., supra, 261 Ill. App.3d 1237. Deere's inaction is insufficient to constitute a waiver under these circumstances because it does not demonstrate conduct "inconsistent with any other intention than to waive." Lehman v.IBP, Inc., 265 III. App.3d 117, 639 N.E.2d 152, 154, leave to appeal denied, 158 Ill.2d 552, 645 N.E.2d 1359 (1994). The court holds that Deere should have been allowed to rely upon Amerequip's assertion that it would procure insurance. Therefore, Amerequip has failed to demonstrate that Deere waived the insurance provision of the supply agreement. Accordingly, Amerequip's motion for summary judgment on this basis is denied.
 2.
Amerequip also contends that Deere's interpretation of the supply agreement is contrary to Illinois law because the supply agreement does not require Deere to be a named insured on the CT Page 11415 policy, or specifically state that the contract would include Deere's negligence. The Illinois Supreme Court has held that a covenant to provide insurance protection for a contracting party should not be construed to impose liability against another party for injuries without his control unless there is clear language in the contract to include the negligence of the contracting party's servants. See Westinghouse Electric Elevator Co. v.LaSalle Monroe Building Corp. , 395 III. 429, 434, 70 N.E.2d 604
(1946). In the present case, the parties agreed that Amerequip would "purchase and maintain product and completed operations liability and blanket contractual liability insurances . . . for the mutual benefit of Amerequip and Deere." However, the insurance provision neither specified that Deere be named as an insured or indicated that the insurance was to include negligent acts of Deere. Rather, the language obligated Amerequip to purchase liability insurance "for the mutual benefit" of Amerequip and Deere. See Juretic v. USX Corporation, 232 Ill. App.3d 131,135, 596 N.E.2d 810 (1992).
The court's primary objective in construing a contract is to give effect to the intention of the parties. The Illinois Supreme Court has held that courts must initially determine as a question of law, whether the language of a contract is ambiguous as to the parties' intent. If the language is clear and explicit, then the court, "as a matter of law, must derive the parties's intent and meaning . . . solely from the writing itself." U.S.G. Interiors,Inc. v. Commercial and Architectural Products, Inc., 241 Ill. App.3d 944,947, 609 N.E.2d 811 (1993), citing Rakowski v.Lucente, 104 Ill.2d 317, 323, 472 N.E.2d 791 (1984); Quake v.American Airlines, Inc., 141 Ill.2d 281, 565 N.E.2d 990, 994
(1990).
The question of whether a contract is ambiguous therefore is a question of law for the court. Contract terms must be given their ordinary and natural meaning where the terms are clear and unambiguous. "[W]here a contract is unambiguous, there is no need to inquire into the intention of the parties." Lucas v.Beaton, 201 Ill. App.3d 341, 346-47, 559 N.E.2d 20 (1990). On the other hand, if the language is reasonably and fairly susceptible of more than one meaning, "such that the true intention of the parties is called into doubt, it becomes necessary to receive extrinsic evidence, and the question of the parties' intent becomes one of fact for the jury." Curran Contracting Co. v.Woodland Hills Development Co., 235 Ill. App.3d 406, 414,602 N.E.2d 497 (1992), leave to appeal denied, 152 Ill.2d 556, 622
CT Page 11416 N.E.2d 1202 (1993). See also Lulich v. Sherwin Williams Company,799 F. Sup. 64, 65 (N.D. Ill. 1992), quoting Metalex Corp. v.Uniden Corp. of America, 863 F.2d 331, 333 (7th Cir. 1988).
Deere asserts that the insurance provision in the supply agreement unambiguously indicates that Amerequip would procure insurance for any suit brought against Deere as a result of damages caused by the post-hole digger. However, applying the standards of contract interpretation cited above leads this court to the inescapable conclusion that the phrase "for the mutual benefit" is undefined under Illinois law and fairly susceptible of more than one meaning. In particular, this phrase does not necessarily mean that Amerequip promised to provide a policy that would insure Deere as to its own negligence. Rather, another reasonable interpretation would be that Amerequip promised only coverage for claims involving issues of shared or overlapping negligence and not necessarily claims of negligence made against each independently of the other. Because the court finds that the phrase "for the mutual benefit" is inherently ambiguous, Deere's motion for summary judgment as to count two of its cross claim must be denied.
 C.
In count four of its complaint, Deere seeks a declaratory judgment to the effect that "Amerequip is obligated to defend, indemnify and insure Deere under the Supply Agreement." Amerequip insists that under Illinois law a claim for declaratory judgment is premature until judgment on the underlying claim is final. In light of the court's ruling on counts one and two of its cross claim, Deere is not entitled to summary judgment as to count four.
Accordingly, the court denies the motions for partial summary judgment of Deere (counts one, two and four) and Lomac (counts one and two). The court also denies Amerequip's motion for summary judgment as to count two of Deere s third-party complaint because Amerequip is not entitled to judgment as a matter of law.
Peck, J.