# Illinois Official Reports

## Appellate Court

---

### *Kozonis v. Tamburello*, 2016 IL App (1st) 160202

---

| | |
|---|---|
| Appellate Court Caption | DEMETRIOS KOZONIS, as Sole Beneficiary with Power of Direction of Parkway Bank and Trust Company, as Trustee u/t/a 11206, Plaintiff-Appellant, v. GIACOMO TAMBURELLO, Defendant-Appellee. |
| District & No. | First District, First Division<br>Docket No. 1-16-0202 |
| Filed | December 19, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-L-2828; the Hon. Brigid Mary McGrath, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Ryan Sullivan, of Kozonis & Associates, Ltd., of Chicago, for appellant.<br><br>John T. Gonnella, of Chicago, for appellee. |
| Panel | JUSTICE MIKVA delivered the judgment of the court, with opinion.<br>Justices Harris and Simon concurred in the judgment and opinion. |

**OPINION**

¶ 1    This is a suit to enforce a guaranty on a lease. The lessor, Parkway Bank and Trust Company, rented space to Euro Cappuccino from January 2000 through December 2002. By a separate written guaranty, defendant Giacomo Tamburello, who is the president of Euro Cappuccino, personally guarantied Euro Cappuccino's obligations under that lease. Euro Cappuccino continued to occupy the premises after the expiration of the original lease term until November 2005, when the parties signed a document titled "Lease Extension" that was to be effective from January 2006 until December 2010. In February 2010, Euro Cappuccino stopped making its full rental payments under the agreement, and the lessor filed suit against Mr. Tamburello, seeking recovery pursuant to the guaranty. The lessor appeals from the dismissal of the complaint to enforce the personal guaranty. The sole issue on appeal is whether the November 1999 personal guaranty remained in effect with respect to the 2005 "Lease Extension" and the month-to-month holdover that followed that lease extension. For the following reasons, we hold that it did not, and therefore, we affirm the circuit court's dismissal of the suit.

¶ 2                                    BACKGROUND

¶ 3    The original lease was for a term of three years, from January 1, 2000, through December 31, 2002 (original lease). It was signed by Mr. Tamburello, as the president of Euro Cappuccino, and Demetrios Kozonis, as an agent for Parkway Bank (lessor). The original lease provided a rent schedule with the rent payments increasing from $1145 per month in the first year of the lease term to $1175 per month in the second year and $1200 per month in the third year. Of further relevance to the present appeal, section 22.01 of the original lease provided:

> "Any holding over after the expiration of the term hereof, if with or without the consent of the Lessor, shall be construed to be a tenancy from month to month, at one and a half (1½) times the rents herein specified (pro-rated on a monthly basis) and shall otherwise be on the terms and conditions herein specified so far as applicable."

¶ 4    Section 27.01(a) of the original lease stated: "Provided that Tenant is not then in default under any of the terms, and provisions of the Lease, *** Tenant shall have the option to extend the terms and provisions of this Lease for an additional three (3) year term." The section further provided that, in order to exercise this option for an extension, Euro Cappuccino was required to notify the lessor in writing "no later than one hundred twenty (120) days prior to the expiration of the third (3rd) Lease Year of the Lease Term." No other extensions were provided for in the original lease.

¶ 5    The guaranty, signed by Mr. Tamburello, referenced the original lease and guarantied to the lessor:

> "[T]he full and faithful performance by the said Tenant of all obligations, covenants, promises and agreements *** of the said Tenant under said Lease from the commencement date of this Lease, and I will pay all of the Lessor's expenses, including court costs and attorney's fees, incurred in enforcing said Tenant's obligations, or incurred in enforcing this, and I hereby waive notice of any default by the Tenant under the terms of said Lease and consent to any extension of time for the payment of money due under said Lease or to any other indulgences granted thereunder

to said Tenant by the Lessor. Should any of Tenant's obligations be outstanding at the expiration of said Lease, the terms and provisions of this shall continue and survive until such outstanding obligations have been satisfied."

¶ 6 Although Euro Cappuccino did not provide written notice to the lessor that it intended to exercise the option to extend the lease, it remained on the premises at the end of the original lease period, from January 1, 2003, through December 31, 2005 (option period). Euro Cappuccino continued to pay rent; however, the record is unclear regarding the exact rental amounts paid during this time period.

¶ 7 On November 4, 2005, Euro Cappuccino and the lessor signed a one-page document titled "Lease Extension," which stated that it was effective from January 1, 2006, through December 31, 2010. The "Lease Extension" provided a new rent schedule with the following payment amounts: $1483 per month in the first year, $1542 per month in the second year, $1604 per month in the third year, $1668 per month in the fourth year, and $1735 per month in the fifth year. The only other provision in the "Lease Extension" stated that "[a]ll other terms and conditions set forth in the Lease except as amended herein shall remain unchanged." The "Lease Extension" was again signed by Mr. Tamburello as the president of Euro Cappuccino and Mr. Kozonis as an agent of Parkway Bank. No new guaranty was signed with the "Lease Extension."

¶ 8 In a June 2015 amended verified complaint, the lessor alleged that Euro Cappuccino had remained on the premises after the "Lease Extension" term had ceased but had failed to pay the full monthly rent beginning in February 2010, thereby breaching the "Lease Extension." According to the lessor, it filed an action in June 2013 for possession and rent against Euro Cappuccino and Mr. Tamburello based on this breach. Although Mr. Tamburello was non-suited in the action, a judgment in the amount of $36,800 was entered against Euro Cappuccino, and the lease was terminated pursuant to that judgment. The lessor further alleged that, "[a]s material inducement for" it to enter into the lease, Mr. Tamburello had signed the written guaranty on the same day the original lease was signed, November 13, 1999, "under which [he] unconditionally guarantied payment and performance of [Euro Cappuccino's] obligations and liabilities" according to the lease. However, despite "multiple demands" upon both Euro Cappuccino and Mr. Tamburello to pay the debt owed under the lease, Mr. Tamburello refused to pay. The lessor concluded by alleging that, as a result of Mr. Tamburello's breach of the guaranty, it had sustained damages in the amount of $40,907, "which continue[d] to accrue under the terms of the lease," and asked that a judgment in that amount be entered against Mr. Tamburello. The lessor attached to its amended verified complaint the original lease, the guaranty, the "Lease Extension," a balance sheet showing the rent amount paid by Euro Cappuccino beginning in January 2010 with a balance due in the amount of $40,907 and the circuit court's June 2013 order for possession entered against Euro Cappuccino.

¶ 9 On July 21, 2016, Mr. Tamburello filed a motion to dismiss the amended verified complaint pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2014)). He argued that the original lease "terminated by its own terms on December 31, 200[2]," because the option to extend was never exercised by Euro Cappuccino in writing. Mr. Tamburello further argued that the guaranty he signed was, by its own terms, only for the original lease because he guaranteed Euro Cappuccino's obligations "under said Lease" only.

¶ 10    After full briefing on the issue, on November 2, 2015, the circuit court granted Mr. Tamburello's motion to dismiss the amended verified complaint with prejudice. In its order, it also noted that the lessor had not appeared. The lessor then appeared and, on November 25, 2015, filed a motion to vacate the dismissal pursuant to section 2-1301 of the Code (735 ILCS 5/2-1301 (West 2014)). In an order dated December 22, 2015, the circuit court granted the lessor's motion to vacate the dismissal and, "having heard argument on defendant's motion to dismiss," again granted the motion to dismiss with prejudice "as of today's date."

¶ 11                                    JURISDICTION

¶ 12    The lessor timely filed its notice of appeal in this matter on January 21, 2016, contesting the circuit court orders of November 2 and December 22, 2015. This court has jurisdiction pursuant to Illinois Supreme Court Rules 301 and 303 governing appeals from final judgments entered by the circuit court in civil cases. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. Jan. 1, 2015).

¶ 13                                     ANALYSIS

¶ 14    The issue before us is whether the guaranty that was attached to the original lease remained in place as a part of the "Lease Extension" that was signed by the parties on November 4, 2005, and if so, whether it also applied to the holdover of that "Lease Extension" after it ended on December 31, 2010. The parties disagree about whether a lease guaranty applies to a holdover term of that lease. However, we need not resolve that conflict since we agree with Mr. Tamburello that the guaranty was not a part of the "Lease Extension" and thus could not obligate him for any missed rent payments under the "Lease Extension" or any holdover period following that agreement.

¶ 15    The "general rule" in Illinois is that "the guarantor of a lease, absent its consent, cannot be held liable for the obligations of the lessee incurred during any extended term other than one secured in accordance with the terms of the lease." *T.C.T. Building Partnership v. Tandy Corp.*, 323 Ill. App. 3d 114, 118 (2001). Thus, any extension of the lease to which the guaranty is attached must be specifically contemplated by that lease.

¶ 16    The guaranty that Mr. Tamburello signed as part of the original lease only contemplated one extension—the option period set out in section 27.01 for a three-year term following the end of the original lease on December 31, 2002. The lessor, however, is trying to enforce a guaranty for the "Lease Extension," which began in 2006—after the option period set out in the original lease was over—continued through 2010, and then continued through a holdover term until the tenant was evicted in 2013. The "Lease Extension," regardless of its label as an "extension," was not an extension that was contemplated by the original lease that Mr. Tamburello guarantied. Accordingly, the "Lease Extension" was not secured "in accordance with the lease terms."

¶ 17    The lessor argues that we should follow the result that the court reached in *T.C.T. Building Partnership*, 323 Ill. App. 3d 114. Although we agree that *T.C.T. Building Partnership* is controlling, it does not help the lessor in this case. The court in that case held that the guaranty at issue remained effective during a lease extension, despite the tenant not having exercised its option to extend the lease in a timely manner as required by that lease. *Id.* at 119-20. Notably, the terms of the guaranty in that case provided:

- 4 -

" '[N]o *** forbearance or delay on the part of the Lessor to enforce any of the provisions, covenants, agreements, conditions and stipulations of said Lease, or waiver by Lease [*sic*] of any of said provisions, covenants, agreements, conditions and stipulations, shall operate to release or discharge the Guarantor from its full liability under this instrument of guaranty or prejudice the rights of Lessor hereunder.' " *Id.* at 117.

Thus, when the lessor extended the lease despite the late notice, the court held that the guaranty remained in effect because the guarantor had agreed that the lessor's waiver of a condition of the lease, such as the notice provision, would not release the guaranty. *Id.* at 120. However, the lease that was guarantied in that case specifically contemplated the lease extension, since it included an option to extend for four additional terms of five years each, and the lessor sought to enforce the guaranty in the first of those four extensions. *Id.* at 115-16.

¶ 18 The guaranty in this case contains language that provides that it remains in effect regardless of "indulgences granted thereunder to said Tenant by the Lessor." This is similar to the language relied upon by the court in *T.C.T. Building Partnership* in holding that the guarantor was still bound by the guaranty during the lease extension, "notwithstanding the fact that the lessor waived a condition of the lease," the notice provision. *Id.* at 120.

¶ 19 In contrast to *T.C.T. Building Partnership*, however, here the lease only contemplated one three-year extension, and the lessor is not trying to enforce the guaranty for that extension. Thus, the guaranty might have covered the three-year option period following the original lease, as this term was specifically contemplated by section 27.01 of that lease, even without Euro Cappuccino's strict compliance with the requirement that it exercise that option in writing. As in *T.C.T. Building Partnership*, the court could view the lessor as having waived the requirement that the lessee exercise that option in writing.

¶ 20 In contrast to *T.C.T. Building Partnership*, however, the "Lease Extension" governing the period from 2006 through 2010 was not contemplated by the original lease, which was the only lease guarantied by Mr. Tamburello. Under these circumstances, the "Lease Extension" was simply not within the terms of the guaranty, even if the lessor had waived any requirements for exercising such an extension.

¶ 21 The lessor argues that the terms of the "Lease Extension" do not include a "material" modification of the original lease and, therefore, the guaranty remained in effect during the "Lease Extension." We agree that, as a "general principle[,] *** a guarantor is not released [from an existing obligation] unless the essentials of the original contract have been changed and the performance required of the principal is materially different from that first contemplated." (Internal quotation marks omitted.) *Chicago Exhibitors Corp. v. Jeepers! of Illinois, Inc.*, 376 Ill. App. 3d 599, 607 (2007). Here, however, the "Lease Extension" did not simply modify the original lease. It was, in fact, a new obligation by the tenant that was never made the subject of a guaranty.

¶ 22 The original lease contemplated, at most, a six-year lease term: the initial three-year lease period from January 1, 2000, through December 31, 2002, followed by a possible three-year extension of the original lease for up to three years, or from January 1, 2003, through December 31, 2005. Mr. Tamburello guarantied Euro Cappuccino's performance under that lease. The "Lease Extension" that was in effect from January 1, 2006, through December 31, 2010, created a new rental obligation for Euro Cappuccino to fulfill. This new obligation was never guarantied by Mr. Tamburello.

- 5 -

¶ 23    The lessor also argues that the guaranty remained in effect during the "Lease Extension" and the holdover period following the "Lease Extension" because Mr. Tamburello was well aware of and consented to the "Lease Extension," which he signed in his capacity as the president of Euro Cappuccino. The lessor recognizes that Mr. Tamburello signed the lease in his corporate capacity. There is no question that "a corporation is a legal entity separate and distinct from its shareholders, directors and officers." *Rohe v. CNA Insurance Co.*, 312 Ill. App. 3d 123, 127 (2000). This distinction exists even if the corporation is closely held or has a single shareholder. *Apollo Real Estate Investment Fund, IV, L.P. v. Gelber*, 398 Ill. App. 3d 773, 787 (2009). Thus, while Mr. Tamburello's signature provides evidence that he knew about the lease extension, it does not make him personally liable.

¶ 24    However, the lessor cites a line of cases that have enforced guaranties against parties who were aware of or consented to changes in the original agreements that were guarantied, even where the guaranty was not expressly made applicable to the new modified agreement or obligation. Those cases hold that there is an exception to the rule discharging a guarantor's obligation where there is an alteration of the underlying contract if "the guarantor has knowledge of and assents, either expressly or by implication, to such change." *Lawndale Steel Co. v. Appel*, 98 Ill. App. 3d 167, 172 (1981) (citing *Bank of Commerce v. Riverside Trails*, 52 Ill. App. 3d 616 (1977)); see also *Mitchell v. Peterson*, 97 Ill. App. 3d 363, 367 (1981) ("It is a familiar exception to the general doctrine relieving the guarantor from liability by reason of a change in the obligation assumed, that the doctrine has no application where the obligor has knowledge of and assents, either expressly or by implication, to such change." (citing *Riverside Trails*, 52 Ill. App. 3d 616)).

¶ 25    However, none of these cases extended a guaranty to a *new obligation* that was not even contemplated by the agreement for which performance had initially been guarantied. In *Peterson*, for example, a guarantor was found liable for his guaranty on a promissory note for which the time for repayment was extended beyond the term set forth in the original note because he solicited the extension. *Peterson*, 97 Ill. App. 3d at 365-66, 370. The court held that he was therefore "estopped" from claiming that the extension was made without his authorization. *Id.* at 367. In *Riverside Trails*, the guarantors remained liable despite a change in the interest rate on a loan from the creditor bank because this change was made with their knowledge and consent. *Riverside Trails*, 52 Ill. App. 3d at 618-19, 623. In *Lawndale Steel*, the court held that the defendant, who guaranteed payments for the sale of steel, was estopped from arguing that two "material changes" to the sales contract—including "an extension of the time for payment" and the plaintiff's use of a different bank than that which was specified in the agreement—discharged him from his obligation as a guarantor because he knew about those changes, although he was not estopped from objecting to an increase in price since he may not have known about the increase. *Lawndale Steel*, 98 Ill. App. 3d at 172-73.

¶ 26    In contrast to those cases, here the original lease guarantied by Mr. Tamburello expired on December 31, 2002; or, if we view the option period as a three-year extension of the original lease, the original lease expired on December 31, 2005. In either scenario the guarantied agreement was long over at the time Euro Cappuccino stopped paying rent in January 2010. It is well settled that a "guarantors' assurances of performance ended with the contract to which they were tied." *Palen v. Cullom Capital Woodworking, Inc.*, 154 Ill. App. 3d 685, 687 (1987). Accordingly, the guaranty was simply no longer in effect after December 31, 2005, and Mr. Tamburello is not obligated to pay for Euro Cappuccino's default in the rent after that date.

¶ 27    Some jurisdictions have followed the *Riverside* line of cases. See *Devereux Properties, Inc. v. BBM&W, Inc.*, 442 S.E.2d 555, 556-57 (N.C. Ct. App. 1994) ("An exception to these rules holds the guarantor responsible for any changes to which he has either expressly or impliedly consented." (citing *Riverside Trails*, 52 Ill. App. 3d 616)); *Regal Shoe Shops v. Kleinman*, 361 So. 2d 765, 766 (Fla. Dist. Ct. App. 1978) ("a corporation officer is not discharged in his capacity as an individual guarantor by an alteration or modification of the contract of guarantee where the variation in the contract was brought about through the guarantor's actions") (applying New York law)). At least one other jurisdiction has strongly criticized it. See *O'Brien Brothers' Partnership, LLP v. Plociennik*, 940 A.2d 692, 698-99 (Vt. 2007) (rejecting the *Riverside Trails* rule as "a creative mixture of theories of implied consent and estoppel" that it declined to adopt).

¶ 28    Whatever the merit may be of applying estoppel when a guarantor is aware of a change to an existing obligation like the one at issue in *Riverside Trails*, *Peterson*, and *Lawndale Steel*, we will not apply it here to an agreement that, in effect, created a new obligation for Euro Cappuccino that was not contemplated in the original lease guarantied by Mr. Tamburello. The original obligation to which that guaranty was tied ceased to exist long ago. As the Vermont Supreme Court noted in *O'Brien Brothers'*, the parties in these cases are generally business people who can protect their interests through appropriate contractual language. *O'Brien Brothers'*, 940 A.2d at 698. In this case, if the lessor wanted a guaranty as a part of the "Lease Extension," it could have negotiated for a new guaranty at the time the "Lease Extension" was signed.

¶ 29    The lessor also argues that the guaranty applied to the "Lease Extension" because Euro Cappuccino's continued occupancy can be viewed as a month-to-month tenancy based on the holdover provision in Section 22.01 the original lease. The lessor relies on *Roth v. Dillavou*, 359 Ill. App. 3d 1023, 1031 (2005), where the appellate court held that, based on a similar holdover provision of the lease in that case, the guaranty continued to be in effect during the month-to-month tenancy that remained in effect. *Id.* Here, however, the facts are clear that when Euro Cappuccino remained on the premises after January 1, 2010, it was not holding over from the original lease that had been guarantied. Since that original lease, the parties had entered into a new agreement, the "Lease Extension," to which the guaranty did not apply, and any holdover was on that agreement, not on the original lease. Therefore, *Roth* is inapposite.

¶ 30    As a final matter, we acknowledge that, at oral argument, the lessor argued that he should have been allowed to take discovery on various oral agreements or understandings that the parties may have reached to extend the guaranty. However, because this point was not included in the lessor's briefs and was raised for the first time at oral argument, it has been waived. See Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016) (the argument section of the appellant's brief "shall contain the contentions of the appellant and the reasons therefor." "Points not argued are waived and shall not be raised in *** oral argument ***."). Moreover, as a party to the lease and the guaranty, the lessor would necessarily have been a party to any oral agreement or modification extending the guaranty. No such oral agreement or modification extending the guaranty was alleged to exist in the complaint, and we accordingly see no need to further address this argument.

¶ 31                                    CONCLUSION

¶ 32            For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 33            Affirmed.